[No. 3063–6–III.   Division Three.   April 8, 1980.]

THE CITY OF YAKIMA, *Respondent,* v. CHERYL
L. EMMONS, *Appellant.*

---

*Douglass A. North* and *Hennings, Maltman, Weber & Reed,* for appellant.

*Fred Andrews, City Attorney,* and *Robert Bounds, Assistant,* for respondent.

McINTURFF, J.—The defendant, Cheryl L. Emmons, appeals a conviction under the Yakima prostitution ordinance.

On March 14, 1978, Ms. Emmons and some friends went to a cafe in Yakima. Earlier in the evening, she had programmed her home telephone to forward her calls to the pay phone at the cafe. Shortly after her arrival, she answered a call and as she was returning to join her friends, the phone rang a second time. Unknown to Ms. Emmons, a police officer working the vice detail had placed the call from a building across the street, while another officer, with the aid of binoculars, observed her answering the phone.

The caller queried: "Are there any girls there looking for a good time?" Ms. Emmons asked if he knew any girls by name. He stated, "No," but he had been to another woman's house on North 6th Avenue. She then asked how much it had cost him and whether he had had a "good time." The officer responded, "Yes, $40." She told him she was with some friends and they were planning to go out for the evening. The officer then said, "Well how about a date tonight?" She responded, "Well, how about two of us?" He said he had never tried that before, and she replied, "Well, two girls make a good time just as one." He asked how much that would cost, and she replied, "The fee is usually around $60."

As the conversation continued, Ms. Emmons gave a description of herself and asked for a description of the officer's car. Although she asked him to come to the cafe, he declined. They agreed to meet at a nearby gas station in 20 minutes. After the conversation, Ms. Emmons and her friends left the cafe by car. Traveling in the opposite direction from the appointed gas station, they were stopped by another police detail and Ms. Emmons was arrested.

Following a bench trial, Ms. Emmons was found guilty of violating the Yakima prostitution ordinance.[1]

Yakima City Ordinance No. 1784, § 1 (1975) provides:

Prostitution. It is unlawful for any person to engage in, or offer or agree to engage in, sexual conduct with any person in return for a fee.

Yakima City Code 6.04.381.

On appeal, Ms. Emmons raises an overbreadth challenge to the constitutionality of the Yakima ordinance on the

---

[1]*Ms. Emmons makes no challenge to the sufficiency of the evidence, but we find the court's analysis of the facts and circumstances of value. The court noted:*

[The ordinance] states it shall be unlawful for any person to engage in or to offer or agree to engage in sexual conduct with any person in return for a fee. We have a fee arrangement here. . . . The term $60 was used, and it is admitted, and the question the Court must decide is whether sexual conduct was implied to the extent that the Court could find beyond a reasonable doubt that the defendant had agreed to engage in sexual conduct for this fee.

There are several things that I must consider. The admitted or at least agreed fact of the conversation—I mentioned before there was the fee agreed to. She did, to Sergeant Riddle, agree to meet with him, and a place and a time was mentioned. The defendant was aware of the fact that prostitutes did frequent that area and, specifically, that particular place of Stockmen's. This telephone situation, that is, the connection between her home and Stockmen's, and one of the girls she was with she knew had been engaging in activities of prostitution, at least in the past, and one other factor that I think stands out, there is nothing to suggest in the evidence in this case, and I am aware of no facts that suggest, that there is a recognized operating legitimate dating service in this area. There would be no reason for a girl to accept a call from a stranger at the location where this call was accepted and a discussion of meeting and dating and of price, to believe in any way that this man was talking about a date in the traditional sense, and you add to that the fact that the term date on the street among people that frequent these places has a different meaning, a different connotation than it does to the ordinary person, and the Court simply and clearly must find that the defendant is guilty.

ground that it impinges upon the First Amendment guaranties of freedom of speech and association. Ms. Emmons' vagueness challenge to the ordinance was abandoned during oral argument in view of *State v. Zuanich,* 92 Wn.2d 61, 68, 593 P.2d 1314 (1979), which held the term "sexual conduct" in the context of the analogous state prostitution statute, RCW 9A.88.030, was not unconstitutionally vague on its face. The constitutional test is met because there is a hard core of conduct—heterosexual genital intercourse—which saves it from the infirmity of vagueness.

█ Likewise, the Yakima prostitution ordinance is not unconstitutionally overbroad. The overbreadth doctrine, though related to the vagueness doctrine, involves questions of substantive due process, *i.e.,* whether the statute or ordinance in question is so broad that it may not only prohibit unprotected behavior but may also prohibit constitutionally protected behavior as well. *Blondheim v. State,* 84 Wn.2d 874, 878, 529 P.2d 1096 (1975), and cases cited; *accord, State v. Carter,* 89 Wn.2d 236, 240, 570 P.2d 1218 (1977); *Grayned v. Rockford,* 408 U.S. 104, 33 L. Ed. 2d 222, 92 S. Ct. 2294 (1972).

█ Ms. Emmons argues the Yakima ordinance might infringe upon rights guaranteed by the First Amendment, but we fail to see how speech directed toward persuading someone to enter into an illegal arrangement, *i.e.,* prostitution, involves constitutionally protected speech. *See State v. Carter, supra* at 241; *State v. Schimmelpfennig,* 92 Wn.2d 95, 103, 594 P.2d 442 (1974). Here, Ms. Emmons accepted the officer's offer for a "date" for a "fee" of $60. According to the officer, the term "date" in "street language" refers to an act of prostitution.[2] Thus, her conduct falls squarely within the statutory proscription. The mere act of offering to engage in sexual intercourse for a consideration is a violation of the law. No overt act is required to

---

[2]The same term appears in *Seattle v. Ross, supra,* where the defendant told the undercover officer that "a date would cost $20."

complete the offense. *Seattle v. Ross,* 77 Wn.2d 797, 798, 467 P.2d 177 (1977), and cases cited.

Ms. Emmons argues that the ordinance is so broad it could well be applied to a legitimate escort service or teenagers on a date. Neither of these situations, however, involves a specific agreement to engage in sexual intercourse in return for a fee. In the absence of such a commercial arrangement, there is no violation of the ordinance. *See State v. Yancy,* 92 Wn.2d 153, 157, 594 P.2d 1342 (1979); *United States v. Moses,* 339 A.2d 46, 52-53 (D.C. 1975), *cert. denied,* 426 U.S. 920, 49 L. Ed. 2d 373, 96 S. Ct. 2624 (1976); *see also* 77 A.L.R.3d 519, § 3 (1977).

Finding no constitutional infirmities within the Yakima ordinance, judgment of the Superior Court is affirmed.

MUNSON, J., concurs.

ROE, J., concurs in the result.

Reconsideration denied May 4, 1980.

Review denied by Supreme Court July 18, 1980.