**STATE of Minnesota, Respondent,**

v.

**George Herman TOTIMEH, Appellant.**

**No. C4-88-620.**

Court of Appeals of Minnesota.

Dec. 27, 1988.
Review Denied Feb. 22, 1989.

Hubert H. Humphrey, III, Atty. Gen., Paul R. Kempainen, Asst. Atty. Gen., St. Paul, Roger Van Heel, Stearns County Atty., St. Cloud, for respondent.

Michael O. Burns, Burns, Wielinski & Elleraas, St. Cloud, C. Paul Jones, Minnesota State Public Defender, Marie L. Wolf, Asst. State Public Defender, University of Minnesota, Minneapolis, for appellant.

Considered and decided by SCHUMACHER, P.J., and HUSPENI and STONE,* JJ., without oral argument.

## OPINION

SCHUMACHER, Judge.

Appellant was tried before the court without a jury and found guilty of burglary in the first degree and criminal sexual conduct in the fourth degree. Appellant argues that the evidence was not sufficient to convict him of either crime. Further, appellant claims newly discovered evidence entitles him to a new trial.

### FACTS

On the morning of June 6, 1987, appellant entered a house inhabited by university students located in St. Cloud through an unlocked door. The house contains several private bedrooms and also common areas that are shared by all the tenants.

R.V., one of the tenants, testified she awoke at about 2:00 a.m. to find appellant

* Acting as judge of the Court of Appeals by appointment pursuant to Minn. Const. art. 6, § 2.

kneeling at the foot of her bed. Her sister, E.V. who was also sleeping in the bed, awoke and became nearly hysterical. She asked appellant what he was doing in her bedroom. Appellant replied, "I guess I'm in the wrong apartment" and left. Thereafter, the women were frightened and unable to sleep. E.V. testified she called her boyfriend in Winona and then the police.

It is undisputed that after leaving R.V.'s residence, appellant proceeded to another student-occupied house on the next block. According to the testimony of T.L., an occupant of the house, she awoke at approximately 3:00 a.m. to the sound of footsteps on the floor above her. T.L. went upstairs and discovered appellant in the kitchen. T.L. testified that appellant stated that he was there to meet one of T.L.'s housemates but T.L. testified that that housemate was out of town. Appellant then followed T.L. downstairs. She demanded that he leave.

The complainant in this case, D.J., occupied a bedroom on the top floor of the same house. D.J. testified that she awoke in her bed feeling the pressure of appellant on top of her. She rolled over in an effort to push him off and told appellant to leave. Appellant began touching D.J. and she pushed his hands away. D.J. contended that appellant told her that he wanted to have oral sex with her. According to D.J.'s testimony, appellant pulled the covers off her, wrapped his arms around her legs and put his face near her vagina. Appellant then touched D.J.'s vaginal area with his hands. She struggled with appellant attempting to push him away. Appellant permitted D.J. to go to the bathroom. When she came out of the bathroom appellant blocked her way and grabbed her arms holding her against the wall. D.J. fought back and screamed "rape" several times. At that point appellant fled.

Appellant's account of the incident differs from D.J.'s. At trial, he testified that he went upstairs to look for his friend Scott, thinking Scott had switched rooms. Appellant saw a light in one of the bedrooms so he knocked at the door. D.J.

awoke and told him that Scott had moved away. It is undisputed that appellant identified himself as "George" and D.J. told him her name. Appellant claimed he was standing in the bedroom doorway and they were conversing when suddenly D.J. jumped out of bed nude and went to the bathroom. Appellant left when D.J. came out of the bathroom and screamed "rape."

Appellant testified that when he got outside a police officer approached him and told him he fit the description of a man who had entered a house down the street. The officer handcuffed appellant and told him to wait by the police car. A short time later, a second officer brought E.V. and R.V. to the car and they identified appellant as the man who was in their bedroom.

Before the officers left the scene, D.J. walked over to them. According to an officer's testimony, D.J. was very upset and crying. She identified appellant as the man who had entered her bedroom and sexually assaulted her.

One police officer testified that as appellant was placed in the back of the police car, appellant stated that he had not walked into anybody's residence but was in the area looking for his friend Scott. Later, when appellant gave a formal statement to police he first stated he entered a residence looking for his friend Scott. He later changed his statement saying he was looking for his friends Roxanne and Sue. Appellant's friend Scott testified that he had seen appellant shortly before the incident and had invited appellant to come and visit him but failed to tell appellant he had moved.

At the trial, witnesses testified that, in college housing, people customarily walked into a residence without knocking to visit a friend. However, the testimony of D.J. and her housemate, T.L. indicated that this practice did not extend to the private bedrooms. D.J. testified that guests would normally call up to the upper floors before they proceeded up the stairs. Further, appellant was a stranger to both D.J. and T.L. and not a guest.

## ISSUES

1. Was the evidence sufficient as a matter of law to support a conviction for burglary in the first degree?

2. Was the evidence sufficient as a matter of law to support a conviction for criminal sexual conduct in the fourth degree?

3. Did the trial court abuse its discretion when it refused to grant a new trial on the basis of newly discovered evidence?

## ANALYSIS

1. In reviewing a sufficiency of the evidence claim, we view the record in the light most favorable to the state and determine whether the facts and any legitimate inferences drawn therefrom reasonably support the jury's verdict. *State v. Race*, 383 N.W. 2d 656, 661 (Minn.1986). A reviewing court applies the same standard to cases heard without a jury as to those heard by a jury. *State v. Mytych*, 292 Minn. 248, 251–52, 194 N.W.2d 276, 279 (1972). The choice between conflicting stories, and the determination of credibility of any witnesses lies with the trier of fact alone. *State v. Lloyd*, 345 N.W.2d 240, 245 (Minn.1984).

Appellant was convicted of burglary in the first degree, which is defined as follows:

> Whoever enters a building without consent and with intent to commit a crime commits burglary in the first degree * * * if:
>
> (c) the burglar assaults a person within the building.

Minn.Stat. § 609.582, subd. 1 (1986).

Appellant contends that the state failed to prove that he entered D.J.'s house without consent. Pursuant to this theory, appellant presented evidence that it was a common campus practice for guests to enter the common areas of a house without first gaining permission.

However, Section 609.581, subd. 4(c) of the Minnesota Statutes, reads in pertinent part:

> Subd. 4 "Enters a building without consent" means:
>
> *  *  *  *  *  *
>
> (c) to remain within a building without the consent of the person in lawful possession.

Minn.Stat. § 609.581, subd. 4(c) (1986).

■ Appellant's failure to comply when told to leave several times by both T.L. and D.J. is a violation of section 609.581, subd. 4(c). The state has met its burden to prove that appellant entered the house without consent.

■ The trial court did not make a specific finding that appellant entered the residence with intent to commit criminal sexual conduct, only that appellant remained in the residence with such intent. In assessing appellant's intent upon entering a house, this court has stated that the relationship of the defendant and alleged victim "was a primary fact to be considered in evaluating defendant's intention when entering the [victim's] home. * * * " *State v. Roberts*, 350 N.W.2d 448, 451–452 (Minn. Ct.App.1984) Appellant had no previous relationship with D.J. or T.L. Further, appellant's entry with intent to commit criminal sexual conduct "was inferable from the evidence of his assaultive conduct once inside." *State v. DeBaere*, 356 N.W.2d 301, 304 (Minn.1984). The evidence supports a finding that appellant entered the house with intent to commit criminal sexual conduct.

■ It is a requirement that the trial court make written findings pursuant to Rule 26.01, subd. 2, Minn.R.Crim.P. However, where the record contains evidence to support the convictions:

> If the court omits a finding on any issue of fact essential to sustain the general finding, it shall be deemed to have made a finding consistent with the general finding.

Rule 26.01, subd. 2, Minn.R.Crim.P. Even though the trial court did not specifically find appellant entered with intent to commit criminal sexual conduct, such intent can be assumed to be included in the general finding.

II. Appellant was also convicted of criminal sexual conduct in the fourth degree. That crime is defined as:

Subdivision 1. Crime defined. A person who engages in sexual contact with another person is guilty of criminal sexual conduct in the fourth degree if any of the following circumstances exist:

\* \* \* \* \* \*

(c) the actor uses force or coercion to accomplish the sexual contact;

Minn.Stat. § 609.345 (Supp.1987).

■ Appellant argues that D.J.'s testimony is inconsistent with her statements to the police after the incident and therefore is insufficient to support his conviction. D.J. told police that she awoke to a pushing weight on her back but at trial, she testified that appellant was lying on top of her. Appellant also notes differences between D.J.'s account to the police and her trial testimony regarding D.J.'s behavior and statements after the incident. The finder of fact has the opportunity to observe witness' demeanor and to weigh their credibility. It has the exclusive function of resolving conflicting testimony. *State v. Lloyd,* 345 N.W.2d at 245.

III. The Minnesota Rules of Criminal Procedure provide that a trial court may grant a new trial on the grounds of:

Material evidence, newly discovered, which with reasonable diligence could not have been found and produced at trial.

Minn.R.Crim.P. 26.04, subd. 1(1)(5). Granting a new trial is within the trial court's discretion. *State v. Guevara,* 270 Minn. 356, 133 N.W.2d 492, 495 (1965).

In *State v. Swanson,* 353 N.W.2d 128 (Minn.1984) the Minnesota Supreme Court said:

Generally, in order to obtain a new trial on the ground of newly discovered evidence, the defendant has to establish that the evidence was not known to him at the time of trial, that his failure to learn of it was not due to his lack of diligence, that the evidence is material,

and that it will probably produce an acquittal at a retrial.

Further, in *Race v. State,* 417 N.W.2d 264, 266 (Minn.1987), the supreme court stated evidence used to impeach a witness is not material.

■ Specifically, appellant asserts E.V. falsely testified that after appellant left her bedroom she called her boyfriend and then the police. After the trial, an investigator for the defense was able to locate a telephone bill showing a call was made to Winona from E.V.'s phone at 3:31 a.m. E.V.'s call to police came at 3:08 a.m. Appellant argues that knowledge of the time of the phone call would have enabled him to show that appellant did not have enough time to commit the alleged offense. Before trial began, appellant knew E.V. had made a statement to police regarding her call to her boyfriend. The telephone bill could have been discovered with due diligence.

Additionally, this impeaching evidence is not material. Appellant admitted in both his statements to police and his trial testimony that he was at both houses and that he had enough time to have conversations with both T.L. and D.J. The appellant, by his own admission has produced a reasonable time frame in which the offense could have happened.

## DECISION

Appellant's conviction for first degree burglary and criminal sexual conduct in the fourth degree are affirmed.

AFFIRMED.