**STATE of Minnesota, Respondent,**

v.

**Rachel Janel OANES, Appellant.**

**No. C1–95–1064.**

Court of Appeals of Minnesota.

Feb. 6, 1996.

Hubert H. Humphrey, III, Attorney General, St. Paul, Surell Brady, Minneapolis City Attorney, Laura A. Yonts, Assistant City Attorney, Minneapolis, for respondent.

Samuel M. Vaught, Gregory M. Pennella, St. Paul, for appellant.

Considered and decided by PETERSON, P.J., and RANDALL and SHORT, JJ.

## OPINION

SHORT, Judge.

After a bench trial, Rachel Janel Oanes was convicted of prostitution in violation of Minn.Stat. § 609.324, subd. 3(1). On appeal, Oanes argues: (1) the evidence is insufficient to support her conviction; (2) the trial court erred by failing to consider the defense of entrapment; and (3) the trial court improperly relied on evidence earlier excluded as irrelevant.

## FACTS

On July 6, 1994, an undercover police officer from the Minneapolis Police Department entered "Nite–Lites," a reputed house of prostitution. Oanes greeted the officer at the door, informing him the cost was $100 and he should pick the woman with whom he would like to spend a "session." The officer selected Oanes.

Oanes brought the officer to a room with a bed and table. She suggested he remove his clothes, told him he could shower if he wanted, and said she would return shortly. The officer took off his clothes and sat on the bed. Oanes returned after approximately ten minutes and laid down on the bed. After making small talk, Oanes asked the officer to massage her. As he rubbed her shoulders, she raised her back and the straps of her halter top fell over her shoulders. The officer pulled the straps down exposing Oanes' breasts, and moved his hands over them. When the officer asked if Oanes was going to massage him, she said she could not and told him to finish massaging her front. The officer continued rubbing Oanes's stomach and then unbuttoned her shorts. When the officer asked for help in removing her clothes, Oanes lifted up her bottom. At the officer's

request, Oanes moved to the middle of the bed and spread her legs apart. After the officer placed his hands on Oanes's inner thighs and his face close to her vaginal area, the officer stopped and arrested her. Oanes was brought to the police station and another officer returned her to Nite–Lites. While in the car, Oanes informed the second officer that she was the manager of Nite–Lites and had previously been a manager of a sauna in St. Paul.

Prior to trial, Oanes raised the defense of entrapment. Her counsel indicated to the court that she did not wish a preliminary hearing, but would proceed to trial. In his final written argument, Oanes's counsel again raised and argued the entrapment issue.

At trial, the undercover officer testified his conduct was necessary to "check out" with Oanes and to show he was not a police officer. He testified he refrained from mentioning sex or money when he was with Oanes because, based on prior knowledge, he believed she would leave if he did. When the state attempted to admit Oanes's statements regarding her management positions, the trial court ruled the information inadmissible because it was not relevant to the current charge of prostitution. In rendering its judgment of conviction, however, the trial court found Oanes

> offered that she was the manager of Nite–Lites. She also indicated that she had previously worked at a sauna in St. Paul.

The trial court concluded Oanes intentionally offered, agreed, and engaged in sexual contact for hire. In reaching its decision, the trial court did not address Oanes's entrapment defense.

## ISSUES

I. Was the evidence sufficient to support Oanes's conviction for prostitution?

II. Did the trial court err by failing to consider Oanes's defense of entrapment?

III. Did the trial court err by referring, in its verdict, to Oanes's statements regarding her management of Nite–Lites and a sauna?

ANALYSIS

I.

■ It is a misdemeanor to "engage[ ] in prostitution with an individual 18 years of age or above." Minn.Stat. § 609.324, subd. 3(1) (1994). Prostitution involves "engaging or offering or agreeing to engage for hire in sexual penetration or sexual contact." Minn.Stat. § 609.321, subd. 9 (1994). "Sexual contact" includes "[t]he intentional touching by an individual of a prostitute's intimate parts" if it may "reasonably be construed as being for the purpose of satisfying the actor's sexual impulses." *Id.,* subd. 10 (1994). In reviewing a claim of insufficiency of the evidence, we must determine whether the evidence, when viewed in a light most favorable to the conviction, reasonably supports the trial court's conclusion. *State v. Webb,* 440 N.W.2d 426, 430 (Minn. 1989).

*A. Sexual Contact*

■ Oanes argues she did not engage in sexual contact because breasts are not "intimate parts" under Minn.Stat. § 609.321, subd. 10. Because the legislature has not defined "intimate parts" in the prostitution statutes, we must construe the words according to common usage. Minn.Stat. § 645.08(1) (1994). A woman's breasts are commonly considered a sexual and intimate part of her body. *See* Minn.Stat. §§ 609.341, subd. 5 (1994) (defining "intimate parts" to include a person's breasts for purposes of the criminal sexual conduct statutes), 617.241, subd. 1(b)(iv) (1994) (defining sexual conduct to include physical contact with a female's breasts), 617.245, subd. 1(e)(4) (1994) (same), 617.246, subd. 1(e)(iv) (1994) (same). In the United States, women normally cover their breasts when in public and take offense at a stranger's touch. *See* Minn.Stat. §§ 609.343, subd. 1 (making certain sexual contact, which includes the touching of another's intimate parts as defined in Minn.Stat. § 609.341, subd. 5, criminal), 609.345, subd. 1 (same), 609.3451, subd. 1 (1994) (same).

Our conclusion that a woman's breast is an intimate body part is supported by precedent of foreign jurisdictions. *See, e.g., State v.*

*Taylor,* 167 Ariz. 429, 808 P.2d 314, 316 (Ct.App.1990) (noting sexual contact, as defined in the Arizona prostitution statute, includes the fondling of female breasts); *State v. Turner,* 33 Or.App. 157, 575 P.2d 1007, 1008 (1978) (recognizing, as a matter of law, that breasts are intimate parts under Oregon's sexual abuse statute), *review denied* (Or. June 20, 1978); *In re Welfare of Adams,* 24 Wash.App. 517, 601 P.2d 995, 997 (1979) (relying on *Turner* and holding that breasts, as a matter of law, are "sexual or other intimate parts" under Washington's indecent liberties statute).

The legislature enacted the current criminal sexual conduct statutes before the present prostitution sections, and grouped them under the common heading "Sex Crimes," thus indicating sex crimes, including prostitution, encompass acts of touching another person's breasts under certain conditions. *See* Minn.Stat. § 645.16(5) (1994) (allowing consideration of laws on similar subjects when interpreting a statute and discerning the legislature's intent); *see also State v. Dooley,* 380 N.W.2d 582, 584 (Minn.App.1986) (finding evidence that the defendant touched the victim's breast, combined with injury, supported conviction for second-degree criminal sexual conduct), *review denied* (Minn. Mar. 27, 1986).

Other similarities between the sex crimes statutes suggest the validity of using one to interpret the other. Both sections provide essentially the same definition of "sexual penetration" and one major difference between the two crimes, the issue of consent, cannot be used as a defense to a prostitution charge. *See* Minn.Stat. §§ 609.321, subd. 11 (defining sexual penetration for prostitution offenses), 609.325, subd. 2 (1994) (disallowing the use of the client's consent as a defense to a prostitution charge); *State v. Kelly,* 379 N.W.2d 649, 652 (Minn.App.1986) (holding consent of a prostitute's customer is not a defense to a charge of prostitution); *see also* Minn.Stat. § 609.341, subd. 12 (1994) (defining sexual penetration for criminal sexual conduct offenses). Thus, the legislature's failure to specifically define "intimate parts" in section 609.321, does not indicate its desire to deviate from the standard established in

section 609.341. *See* Minn.Stat. § 609.321, subd. 3 (1994) (using other sections of chapter 609 to define "force" for purposes of the prostitution statutes); *see also* Minn.Stat. § 609.3451, subd. 1 (explicitly deviating from the definition of sexual contact (generally, the touching of another's intimate parts) provided by Minn.Stat. § 609.341, subd. 11(a) (1994)).

### B. Satisfaction of Sexual Impulses

■ Oanes also argues the undercover officer did not have the required intent to sustain conviction because *he* did not subjectively intend to satisfy *his* sexual impulses by touching her breasts. However, the statute's language, "if the acts can *reasonably* be construed as being for the purpose of satisfying the actor's sexual impulses," suggests an objective standard. Minn.Stat. § 609.321, subd. 10 (emphasis added); *cf. Guinther v. Wilkinson*, 679 F.Supp. 1066, 1069–70 (D.Utah 1988) (finding the definition of "sexual activity" in a prostitution statute unconstitutional, in part, because the terms "apparent or *actual* sexual stimulation or gratification" were wholly capricious and lacking a "standard of objective measurement") (emphasis added). The statute looks to the intent of the *prostitute* to determine whether an offer or agreement was made, thus suggesting the client's subjective intent is not relevant. *See State v. Crist*, 281 N.W.2d 657, 658 (Minn.1979) (holding the state need prove only that the prostitute "*intentionally* agreed or offered to engage in sexual intercourse for hire") (emphasis added). In addition, a prostitution conviction does not require proof beyond a reasonable doubt of the intentions of the *client*, who is not a defendant. *Compare State v. Tibbetts*, 281 N.W.2d 499, 500 (Minn.1979) (holding the *defendant*, charged with criminal sexual conduct, was denied due process by the trial court's instruction that the jury need only find that his actions could reasonably be construed for the purpose of satisfying *his* sexual impulses) *with* 1984 Minn. Laws ch. 525, § 3 (deleting "if the acts can *reasonably* be construed as being" preceding "for the purpose of satisfying the actor's sexual or aggressive impulses" in Minn.Stat. § 609.341, subd. 11) (emphasis added).

### C. Offer and Agreement

■ Oanes further argues the record does not establish that she offered to engage for hire in sexual contact or sexual penetration. However, an offer need not be explicit, but may be implied by the defendant's words and actions. *State v. Bennett*, 258 N.W.2d 895, 897 (Minn.1977).

■ When the undercover officer entered Nite–Lites, he was told it would cost $100 for a session with a woman. Although Oanes did not state what a session included, the price suggests inclusion of something more than polite conversation. When the officer accepted the proposition by choosing her, Oanes led him to a room and told him to undress. She later allowed him to remove her clothing and touch her breasts, then asked him to continue massaging her front, and twice spread her legs apart at his suggestion. While Oanes argues her failure to terminate the encounter cannot imply an affirmative offer for sexual conduct, the circumstances indicate she offered to engage in sexual contact or sexual penetration for hire. *See State v. Armstrong*, 282 Minn. 39, 45, 162 N.W.2d 357, 361–62 (1968) (holding the circumstances, in which a known prostitute was present in an area rife with solicitation of prostitution and entered the car of a stranger without a plausible account of her actions, supported the defendant's conviction for prostitution); *see also City of Yakima v. Emmons*, 25 Wash. App. 798, 609 P.2d 973, 976 (1980) (affirming a conviction for prostitution based on the defendant's offer of a "date" for a fee of $60 and a police officer's testimony that "date" in street language meant prostitution), *review denied* (Wash. July 18, 1980). The evidence, when viewed in a light most favorable to conviction, reasonably supports the trial court's conclusion that Oanes engaged for pay in sexual contact with the officer and offered to engage in sexual penetration or sexual contact for hire.

### II.

Oanes argues the trial court erred by failing to provide specific findings and conclusions regarding her asserted defense of en-

trapment. When presiding over a bench trial, a court must, within seven days after completion of the trial, make a general determination of guilt or innocence. Minn. R.Crim.P. 26.01, subd. 2. In a misdemeanor case, the trial court must also make specific, written findings regarding the facts essential to the general finding *within seven days after the filing of a notice of appeal.* *Id.* However, after a bench trial, if the trial court omits a factual finding essential to the merits of guilt or innocence, it shall be deemed to have made a finding consistent with the general finding. *Id.; see also State v. Scarver,* 458 N.W.2d 167, 169 (Minn.App.1990) (remanding for findings regarding the suppression of evidence, an issue separate from the merits of guilt or innocence); *State v. Totimeh,* 433 N.W.2d 921, 924 (Minn.App.1988) (implying a finding of the intent necessary to prove guilt), *review denied* (Minn. Feb. 22, 1989); *State v. Taylor,* 427 N.W.2d 1, 4–5 (Minn.App.1988) (noting the lack of *any* factual findings and refusing to imply their existence), *review denied* (Minn. Sept. 28, 1988). *But see State v. Grilli,* 304 Minn. 80, 95, 230 N.W.2d 445, 455 (1975) (stating, in a case decided *before the enactment of the Minnesota Rules of Criminal Procedure,* that if a trial court is to act as finder of fact *solely* on the issue of entrapment, it must expressly decide the issue and provide findings of fact).

■ This case involves a misdemeanor offense. Therefore, the trial court had no obligation to make *any* specific findings of fact until seven days after Oanes filed her notice of appeal. Minn.R.Crim.P. 26.01, subd. 2. The purpose behind rule 26.01, subdivision 2, is to conserve judicial resources and not to require a written statement of specific findings in cases involving relatively minor infractions unless a defendant makes the unlikely choice to take an appeal. It would be impractical to require trial judges to track the procedural postures of all cases and to file findings seven days after the filing of a notice of appeal *in the absence of any prompting* by the appellant. Thus, an ap-

pealing misdemeanant must expressly advise the trial judge of the need to provide a full set of written factual findings. *Cf. Frank v. Illinois Farmers Ins. Co.,* 336 N.W.2d 307, 311 (Minn.1983) (noting, in a civil case, parties have the burden of bringing omitted issues to the attention of the trial court and holding the failure to do so by a motion for amended findings forfeits the right to appellate review of those issues); *Anderson v. Peterson's N. Branch Mill, Inc.,* 503 N.W.2d 517, 518–19 (Minn.App.1993) (same); *Pacific Mut. Door Co. v. James,* 465 N.W.2d 696, 701 (Minn.App.1991) (same); *Love v. Amsler,* 441 N.W.2d 555, 560 (Minn.App.1989) (same), *review denied* (Minn. Aug. 15, 1989). Because Oanes offers no evidence suggesting that she informed the trial court of the need for a complete statement of factual findings to support the determination of guilt, it was not error for the trial court to provide an incomplete justification for its decision regarding criminal liability.

■ Even if the trial court had an obligation *sua sponte* to provide Oanes with a complete justification of its decision, its omission of the issue of entrapment is not fatal, but requires us to imply a finding that is consistent with the trial court's determination of guilt.[1] *See* Minn.R.Crim.P. 26.01, subd. 2 (providing that, if the trial court omits a finding on any issue of fact essential to sustain the determination of guilt or innocence, "it *shall* be deemed to have made a finding consistent with the general finding") (emphasis added); *State v. Olson,* 478 N.W.2d 218, 220 (Minn.App.1991) (stating that, in acquitting the defendant, the trial court made an implied finding regarding the strength of his alibi defense); *Totimeh,* 433 N.W.2d at 924 (implying a finding of the intent necessary to prove guilt); *see also* Minn.R.Crim.P. 26.01 cmt. ("The consequences of an omission of a finding on an essential fact comes from Minn.R.Civ.P. 49[.01](a)."); *Regents of Univ. of Minn. v. Medical Inc.,* 382 N.W.2d 201, 210 (Minn. App.1986) (holding that, as a consequence of the trial court's omission of findings regard-

1. We agree that, in gross misdemeanor and felony cases, rule 26.01, subdivision 2 *requires* trial courts to make such findings sua sponte. How-

ever, the rule expressly mandates our response to this misdemeanor situation.

ing the affirmative defense of patent misuse in a civil case, the court of appeals "must imply findings consistent with the verdict"), *review denied* (Minn. Apr. 18, 1986), *cert. denied,* 479 U.S. 910, 107 S.Ct. 307, 93 L.Ed.2d 282 (1986). *Compare* Minn.R.Civ.P. 52.01 1985 advisory comm. note (explaining factual findings exist to permit meaningful appellate review) *with Crowley Co. v. Metropolitan Airports Comm'n,* 394 N.W.2d 542, 545 (Minn.App.1986) (recognizing that appellate courts may exercise their function in the absence of findings, provided that the record is reasonably clear and the facts are not seriously disputed and quoting *Roberson v. Roberson,* 296 Minn. 476, 478, 206 N.W.2d 347, 348 (1973), as authority). Under these circumstances, Oanes's argument is actually whether the evidence is sufficient to sustain a rejection of her asserted defense. *See Totimeh,* 433 N.W.2d at 924 (addressing the question of omitted findings in a discussion of the evidence's sufficiency to support the conclusions).

■■■ A defendant must raise an entrapment defense by establishing by a fair preponderance of the evidence that a government actor initiated the criminal idea. *State v. Ford,* 276 N.W.2d 178, 182 (Minn.1979). Although the officer first approached Nite-Lites, the evidence shows Oanes was predisposed to exchange sex for money on his arrival. Oanes immediately informed the officer, without any inquiry on his part, of the cost for a session with a woman of his choice. When the officer indicated his agreement, Oanes led him to a room and suggested he undress. While the officer may have initially approached Oanes, he merely accepted her offer when he arrived at the house. *See Grilli,* 304 Minn. at 89, 91–92, 230 N.W.2d at 452 (holding predisposition may be shown by evidence of the defendant's active solicitation of the crime); *State v. Olson,* 361 N.W.2d 899, 905 (Minn.App.1985) (noting the defendant must establish the state actor did more than merely solicit the crime), *rev'd in part on other grounds,* 379 N.W.2d 524 (Minn. 1986). Furthermore, although the officer undressed Oanes, she assisted him and complied with his later requests concerning her position, indicating in no way that she was not predisposed to do what his actions sug-

gested. The officer made his requests once and did not have to further entice compliance. Under these circumstances, in which Oanes failed to establish by a fair preponderance of the evidence that she was not predisposed to commit an act of prostitution, she failed to raise an entrapment defense. *Cf. Crist,* 281 N.W.2d at 658 (affirming the trial court's determination that no entrapment existed because the evidence supported the conclusion that the defendant initiated the criminal activity and was predisposed to commit prostitution). Thus, the facts regarding Oanes's failure to raise this issue were not essential to sustain her conviction for prostitution. The trial court did not err in failing to make findings of fact addressing Oanes's alleged entrapment.

## III.

■■■ A trial court should not consider legally irrelevant facts. *Juster Bros. v. Christgau,* 214 Minn. 108, 120, 7 N.W.2d 501, 508 (1943) (quoting *Morgan v. United States,* 298 U.S. 468, 480, 56 S.Ct. 906, 911, 80 L.Ed. 1288 (1936)). Oanes argues the trial court committed reversible error because it included a reference to Oanes's statements that were ruled irrelevant to the prostitution charge. However, even if the court erroneously admitted and considered this evidence, the error does not require reversal unless it substantially affected Oanes's rights. *See* Minn.R.Evid. 103(a) (error may not be predicated on a ruling admitting evidence unless a substantial right of the party is affected); *Uselman v. Uselman,* 464 N.W.2d 130, 138 (Minn.1990) (providing for a new trial based on an erroneous evidentiary ruling only when the appellant can demonstrate prejudicial error); *State v. Orfi,* 511 N.W.2d 464, 470 (Minn.App.1994) (denying a request for remand because the improper admission of testimony was harmless beyond a reasonable doubt), *review denied* (Minn. Mar. 15, 1994).

The trial court briefly mentioned, amidst 33 other findings of fact, Oanes's statements regarding her management positions at Nite–Lites and a sauna in St. Paul. The trial court's conclusions of law dealt solely with the events on the evening of July 6. Those events sufficiently supported Oanes's convic-

tion for prostitution without resort to her statements regarding her prior and current employment status. *See State v. Morgan,* 296 N.W.2d 397, 404 (Minn.1980) (finding no prejudice when the allegedly improper evidence was unrelated to the charged offense); *State v. Hjerstrom,* 287 N.W.2d 625, 628 (Minn.1979) (upholding a conviction, despite the trial court's error, because the evidence overwhelmingly established the defendant's guilt). Under these circumstances, we hold the trial court's consideration of the statements was harmless beyond a reasonable doubt.

## DECISION

The evidence supports Oanes's conviction for prostitution based on her engagement for hire in sexual contact and her offer to engage for hire in sexual contact or sexual intercourse. In addition, any error by the trial court in failing to consider her entrapment defense and in referring to statements unrelated to the offense was not prejudicial.

**Affirmed.**

RANDALL, Judge (dissenting).

I respectfully dissent. I conclude the reversible error committed here is the trial court's failing to answer by a specific finding appellant's defense of entrapment.

Entrapment, like justifiable self-defense or a complete alibi, if found credible by the factfinder, can constitute a full defense to a criminal charge. Thus, it cannot be a technicality that can be ignored. The record is undisputed that the trial court did not specifically rule on entrapment and did not specifically address entrapment by name in its findings and judgment of guilty.

A criminal bench trial is different than a criminal trial to a jury. Juries are given a general verdict form showing on each count(s) that they can find the defendant guilty of that count(s), or not guilty of that count(s). They are rarely given special verdict forms to answer. One common exception, not at issue here, is where the evidence at trial suggests that the value of the stolen property could fall just above or just below the cutoff that differentiates felony theft

from misdemeanor theft. *See* Minn.Stat. § 609.52, subd. 3 (1994) (offense is felony theft where value of property stolen is more than $500). The jury might well be given a factual question to answer, such as: "Is the fair market value of the property worth $500 or more? Answer yes or no."

When a defendant raises the affirmative defense of alibi or justifiable self-defense, or as here, entrapment, if there is a jury, the jury simply would have been asked to return the verdict form finding appellant guilty or the form finding appellant not guilty. They would *not* have been asked by a special verdict form whether they believed or disbelieved any particular defense the defendant put into evidence. *But,* bench criminal trials are just the opposite. Trial judges are required to make specific findings. Minnesota Rules of Criminal Procedure 26.01, subdivision 2 (and its comments thereto), read in conjunction with Minnesota Rules of Civil Procedure 49.01(a), mandate that at a bench criminal trial, the court "shall in addition specifically find the essential facts in writing on the record." That mandate can only not be followed when the party entitled to the specific finding waives the right to a fact finding on the issue omitted. Minn.R.Civ.P. 49.01(a).

Not only is there no waiver here by appellant of a specific finding of fact on the issue of entrapment, the record is clear appellant waived her right to trial by jury, agreed to submit to the court all of her case, including her evidence of entrapment, the case was tried by consent of both parties on entrapment as one of the main issues, and appellant timely appealed, as soon as the judgment of conviction came down, the lack of a specific finding on entrapment. Here, the trial court did make certain findings, but omitted any specific reference to entrapment by name. *State v. Grilli* mandates that when a defendant waives a jury, the trial court *shall* make findings of fact and conclusions of law on the record following the hearing on the claim of entrapment. 304 Minn. 80, 95, 230 N.W.2d 445, 455 (1975).

It could be argued that since the trial court did render a verdict of guilty, that if it had made specific findings, and if it had

made a specific conclusion on entrapment, it would have rejected that defense. But I suggest that in a criminal case, it is dangerous for an appellate court to assume what a trial court was thinking, and what it "would have said if it said something." Further, *Grilli* neither gives a trial court the right to omit specific findings on entrapment, nor gives us the right to assume they are not needed.

I believe the majority mishandles *State v. Crist,* 281 N.W.2d 657, 658 (Minn.1979). Although at a jury trial (when the defendants elects, under *Grilli,* to go right to a jury and waive a pretrial hearing to the court on the issue), the defendant has to raise the issue of entrapment by a preponderance, the issue of entrapment is raised when sufficient facts are put forth to show that law enforcement originated the criminal intent. *See Grilli,* 304 Minn. 80, 230 N.W.2d 445 at 451. On the other hand, the defendant's predisposition to commit the crime is, in effect, a "defense", the state throws back at the defendant once entrapment is raised. I read *Grilli* to mean that the state handles predisposition (by proof beyond a reasonable doubt) once entrapment becomes an issue as opposed to the majority finding fault with appellant here for "failing to establish she was not predisposed to commit an act of prostitution." But irrespective of the placement of burden of persuasion versus burden of production, it is clear that *Grilli* mandates that the one thing the trial court cannot do with an entrapment issue is to say nothing.

The majority, using *Grilli,* states in effect that unless the defendant proves by a fair preponderance of the evidence that law enforcement initiated criminal intent, the trial court need not even "consider" an entrapment defense. The majority quotes *Grilli:*

> The burden is on the defendant to raise by a fair preponderance of the evidence the issue of entrapment for *consideration by the court* or jury, as he elects. Once such an issue is raised, the burden is on the state to prove beyond a reasonable doubt that the accused was predisposed to commit the crime charged.

(Emphasis added). *Id.* (citing *United States v. Mosley,* 496 F.2d 1012, 1014 (5 Cir.1974)).

I suggest this is a misreading of *Grilli.* *Grilli* has to be read keeping in mind that the *Grilli* court was discussing bifurcated jury trials when entrapment was an issue, not a pure bench trial as we have here.

When a defendant elects her right to go straight to the jury on all issues, including the defense of entrapment, the defendant does have to raise, by a fair preponderance of the evidence, the issue of entrapment. If she fails, the state has no obligation to rebut by showing predisposition, and the jury is not even instructed on the defense of entrapment. That is the issue the *Grilli* court, citing the *Mosley* court, was referring to.

To explain the phrase "consideration by the court", it is helpful to walk through the phrase, keeping the *Grilli* pretrial election of a defendant in mind.

If a defendant elects to have the court hear the issue of entrapment prior to trial, the defendant has to raise entrapment by a preponderance of the evidence before the judge will even shift to the state the burden to produce evidence, to show by proof beyond a reasonable doubt, that there was predisposition. If the defendant does not raise entrapment by a preponderance of the evidence, the trial judge need go no further. He can state that the defendant has failed to sustain her burden, no counter evidence or rebuttal by the state is needed, and the issue will not go to the jury, *but the trial judge has to so state.* Put another way, the trial court cannot "not consider entrapment and not rule on it by name." The trial court record has to at least show the trial court considered it, and rejected it.

*Grilli* speaks forcefully to the need for specific findings accepting or rejecting entrapment outright, or accepting it temporarily and sending it to the jury along with instructing the jury how the state can overcome it. What the majority has failed to do with its analysis of *Grilli* and *Crist* is to note that in both *Grilli* and *Crist the trial court made specific findings* up or down on the issue of entrapment. That is all that is lacking here. There is no "burden of proof" on a defendant at a bench trial to come up to some imaginary threshold before the defen-

dant can even put in evidence. This appellant has, as all defendants have, an absolute constitutional right to plead not guilty, waive a jury, and submit evidence at a bench trial on whatever proof they have tending to support their plea. If a defendant's presentation of evidence becomes far-fetched, immaterial, whatever, the trial court might start sustaining objections of irrelevant, immaterial, etc., etc. But at a minimum, the court has to so state, or in other words, issue a ruling that it has heard the evidence, considered it, and finding it irrelevant, strikes it from the record.

In this bench trial, there was *no specific ruling* throwing out appellant's evidence on any grounds. The trial court heard her evidence, the state countered her evidence with their own evidence, and all that is left is for the trial court to rule. Minnesota Rules of Criminal Procedure, 26.01, subd. 2, and *Grilli,* when entrapment is an issue, simply mandate that the trial court consider entrapment by name and make a specific ruling. The obligation to make that ruling is not permissive but is mandatory.

The following evidence from the record leads me to conclude that the trial court here should have at least, according to *Grilli,* made specific findings and a specific conclusion of law on the defense of entrapment.

Two undercover officers intentionally went to a reputed house of prostitution where appellant worked. They were not walking by idly on their way to coffee when someone beckoned them over, and, to their surprise, they found out they were by the front door of a suspected bordello. They went there deliberately to see if "they could find crime."

The first officer entered, learned the price of an hour's "talk," picked out a woman after it was suggested he choose someone, went into a bedroom with her, removed his clothes and removed the woman's clothes. The record is clear the woman never told him to remove his clothes and her clothes; he did it on his own. She did ask him what he wanted to do. When the first officer mentioned that he was thinking about "maybe some sex" the woman got up and left, stating "we don't do or talk about that here * * *." This first officer "struck out" and none of the conduct

he observed led to any arrests. But the first officer's conduct is relevant to set the stage for one of the age-old questions in the encounter between undercover officers and suspected prostitutes, namely "who asked who?"

The second officer, the one whose observations led to the arrest and thus this present appeal, next went into the house. He knew beforehand, from the experience of other vice officers, that street-wise prostitutes, always being subject to undercover busts, want suspected undercover agents to actively engage in sexual contact and penetration. Their belief is that real law enforcement won't initiate sexual contact and penetration and "go all the way." Thus, if the trick talks a good game, but seems reluctant to actually do any serious lovemaking, a red flag goes up for the knowledgeable streetwalker, and she keeps a wary eye on the customer. Thus, the game has developed for some time now between undercover agents and suspected prostitutes whereby the officers go as far as they can to convince the target prostitute that they are a genuine customer. This is done in hopes that she will commit to some magic buzz word, meaning "I will trade sex for money" and the arrest can be made at that point, and evidence gathered for court. How far the undercover officer goes becomes an individual determination as to how dedicated you are, and how much you get into your work.

With that background, the second officer went into the house and was met at the door by appellant. She told him the cost was $100 for an hour session with any girl of his choice. She did not state what a session meant nor did the officer ask. The officer chose appellant (no money ever did change hands). The two went to a room where the officer took off his clothes at appellant's suggestion. She left for a short time, returned, and asked the officer to give her a massage. The officer removed her halter top and her shorts. She never asked him to take off her clothes. He just did it. The prosecution argues that somehow this is not evidence of entrapment, as the officer claims appellant assisted him in undressing her by lifting her arms and raising her hips. I suggest this could be evidence of entrapment, or could not

be, depending on how the trial court sees all the evidence, the whole picture. But the point is, and remains, that pursuant to *Grilli*, the trial court must make specific findings and a specific legal conclusion whether entrapment was proven by the defendant and accepted, or whether it was not.

*The officer asked appellant for a massage.* She indicated she was not a licensed masseuse and thus would not give him a massage. Appellant suggested he massage her. The officer did not point out that he was also not a licensed masseuse. Instead, he massaged her stomach and her breasts. *The officer* then *asked* appellant to move to the center of the bed. *The officer* then *asked* her to spread her legs. When she did, *the officer* placed his hands between her legs and spread her legs yet further. *The officer* then moved his face toward appellant's vaginal area. When he was within a few inches, the officer stopped and now arrested appellant for engaging in prostitution.

We are not reviewing the case under our limited scope of appellate review as if there had been a specific finding of no entrapment, a factual determination, and the defendant appealed arguing insufficiency of evidence. Rather, we are reviewing appellant's contention that on these facts, the trial court had to have at least made the specific finding mandated by *Grilli* as to whether entrapment was found or not found. I strongly conclude the trial court should have made that specific finding. Further I conclude from *Grilli* that its absence cannot be harmless error.

This case can be handled by a straightforward reverse and remand to the trial court to supplement its findings with a specific reference to, and acceptance or rejection of the defense of entrapment. No further testimony is needed, both sides have opened, closed and rested, and the record is complete. The trial court has already made partial findings and it would not be an imposition to supplement those findings and specifically cover entrapment. If the trial court should decide, upon reflection, to now enter a judgment of acquittal, the case is over. If the trial court specifically considers entrapment and then rejects it, it will re-enter a judgment of guilty, and the case would then be ripe for appeal, should appellant do so.

I dissent and would reverse and remand to the trial court for *Grilli* specific findings on entrapment.