*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A14-1318**

State of Minnesota,
Respondent,

vs.

John Jay Pederson,
Appellant.

**Filed August 17, 2015
Affirmed
Johnson, Judge**

Ramsey County District Court
File No. 62-CR-13-8124

Lori Swanson, Attorney General, St. Paul, Minnesota; and

John J. Choi, Ramsey County Attorney, Adam E. Petras, Assistant County Attorney, St. Paul, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, David W. Merchant, Assistant Public Defender, St. Paul, Minnesota (for appellant)

Considered and decided by Johnson, Presiding Judge; Ross, Judge; and Willis, Judge.*

---

*Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

**UNPUBLISHED OPINION**

**JOHNSON**, Judge

John Jay Pederson was convicted of possession of a firearm by an ineligible person. On appeal, he challenges the sufficiency of the evidence and the district court's refusal at sentencing to depart downward from the statutory mandatory-minimum sentence. We affirm.

**FACTS**

In October 2013, Pederson was residing in a home in the city of St. Anthony. A confidential informant reported to law enforcement that Pederson was selling stolen firearms. On October 22, 2013, officers of the St. Paul Police Department searched Pederson's person and van, pursuant to a warrant, without finding any firearms. But the officers found a padlock key in the glove compartment of Pederson's van. Pederson told the officers that the key was for a lock on his storage unit. When asked, Pederson agreed to take the officers to the storage unit. Pederson also voluntarily told the officers that stolen firearms were inside the storage unit. When the officers arrived at the storage unit with Pederson, they confirmed that the key opened the lock to the storage unit. Pederson consented to a search of his storage unit. The officers found two shotguns, which they later learned had been stolen from a vehicle in the city of Shoreview.

The state charged Pederson with one count of possession of a firearm by an ineligible person, in violation of Minn. Stat. § 624.713, subd. 1(2) (2012). He waived his right to a jury trial and agreed to a stipulated-facts bench trial, which occurred in March

2014. *See* Minn. R. Crim. P. 26.01, subd. 3. The primary issue for the district court was whether Pederson possessed the firearms that were found in his storage unit.

The parties stipulated to certain facts, including the following: Pederson was ineligible to possess a firearm on October 22, 2013, because of previous convictions for crimes of violence. A DNA test excluded Pederson as being a contributor to the DNA profile found on one of the firearms. A DNA test was inconclusive with respect to the other firearm because 30% of the general population, but not Pederson, is excluded from being a contributor to that DNA profile. The parties also stipulated to the admission of numerous exhibits, including the police report, the warrant that authorized the searches of Pederson's person and van, Pederson's written consent to search his storage unit, reports of DNA tests, photographs of the firearms found in the storage unit, and a disk containing an audio-recording of Pederson's custodial interview. The state did not offer any additional evidence.

Pederson took the witness stand and testified in detail about why the firearms were present in his storage unit. He explained that he allowed an acquaintance, R.A., to rent a room in his home. R.A. told Pederson that he was in possession of stolen firearms and offered the firearms to Pederson in exchange for a reduction in his rent. Pederson declined the offer, knowing that he was ineligible to possess firearms. On October 21, 2013, Pederson and a co-worker went to Pederson's home after work to see whether R.A. had moved in. When Pederson opened the door to R.A.'s room, he saw a plastic bag that he believed contained firearms. Pederson asked his co-worker to check whether firearms were in the bag; the co-worker confirmed Pederson's suspicion. Pederson asked his

3

co-worker to remove the firearms from his house. The co-worker placed the firearms in Pederson's van. Pederson did not touch the firearms and did not see his co-worker put them in his van. Pederson and his co-worker decided to take the firearms to Pederson's storage unit so that they were "well out of [his] vicinity." The co-worker drove Pederson's van to the storage unit while Pederson sat in the passenger seat. After they arrived, the co-worker removed the firearms from the van and placed them in the storage unit. Pederson did not touch the firearms and did not exit the van. After the firearms were placed in the storage unit, Pederson returned home. The next day, police officers arrived at Pederson's work site with the search warrant.

The district court found Pederson guilty. The district court reasoned that the state proved that Pederson was in constructive possession of the firearms when they were transferred from his home to his van and when they were kept in his storage unit. Before sentencing, Pederson moved for a downward dispositional departure or, in the alternative, a downward durational departure. The district court denied the motion and imposed a sentence of 60 months of imprisonment. Pederson appeals.

## D E C I S I O N

### I. Sufficiency of the Evidence

Pederson challenges the sufficiency of the evidence supporting his conviction. He contends that he did not exercise the requisite dominion and control over the firearms.

When reviewing the sufficiency of the evidence, we conduct "a painstaking analysis of the record to determine whether the evidence, when viewed in the light most favorable to the conviction, was sufficient" to support a conviction. *State v. Ortega*, 813

4

N.W.2d 86, 100 (Minn. 2012) (quotation omitted). In undertaking this analysis, we "assume that the factfinder disbelieved any testimony conflicting with that [conviction]." *State v. Palmer*, 803 N.W.2d 727, 733 (Minn. 2011). "[W]e will not disturb the verdict if the [fact-finder], acting with due regard for the presumption of innocence and the requirement of proof beyond a reasonable doubt, could reasonably conclude that the defendant was guilty of the charged offense." *Ortega*, 813 N.W.2d at 100. We apply "the same standard of review in bench trials and in jury trials in evaluating the sufficiency of the evidence." *Palmer*, 803 N.W.2d at 733.

A person commits a felony offense if he possesses a firearm after having been convicted of a crime of violence. Minn. Stat. § 624.713, subds. 1(2), 2(b). Pederson stipulated that he previously had been convicted of a crime of violence. Thus, the only issue is whether he possessed a firearm. The state may establish a violation of section 624.713 by proving either actual possession or constructive possession of a firearm. *See State v. Salyers*, 858 N.W.2d 156, 159 (Minn. 2015). There was no evidence at trial that Pederson had actual possession of the firearms in the sense that he touched them or handled them. Accordingly, the state relied on the doctrine of constructive possession.

> [T]he purpose of the constructive-possession doctrine "is to include within the possession statute those cases where the state cannot prove actual or physical possession at the time of arrest but where the inference is strong that the defendant at one time physically possessed the [item] and did not abandon his possessory interest in the [item] but rather continued to exercise dominion and control over it up to the time of the arrest."

5

*Id.* (alteration in original) (quoting *State v. Florine*, 303 Minn. 103, 104-05, 226 N.W.2d 609, 610 (1975)). To establish constructive possession, the state must prove "either (1) that the prohibited item was found in a place under defendant's exclusive control to which other people did not normally have access," or "(2) if the prohibited item was found in a place to which others had access, there is a strong probability (inferable from other evidence) that defendant was at the time consciously exercising dominion and control over it." *Id.* (quotation omitted).

The district court focused primarily on the second part of this test, presumably because Pederson testified that other persons shared the storage unit and also had keys to the lock. The district court found that Pederson exercised dominion and control over the firearms at two different times. First, the district court found, "Defendant knowingly exercised dominion and control over the guns in having them removed from his house, placed in his vehicle, and transported to the storage locker." Second, the district court found that Pederson exercised dominion and control over the firearms "[w]hile the guns were in the storage locker."

Pederson contends that the evidence is insufficient to demonstrate that he had dominion and control over the firearms because he "innocently" found the firearms in his home, took steps to ensure that the firearms were removed from his home, and voluntarily disclosed the firearms to law-enforcement officers when they arrested him. He emphasizes his testimony that, before officers obtained a search warrant, he intended to turn the firearms over to police or ask his parole agent what he should do. He urges

the court to apply the law in a way that avoids punishment of a person who is a passive recipient of firearms from another person.

We note that Pederson's argument concerning the relevant evidence is not supported by the district court's findings of fact. The district court did not endorse Pederson's testimony that he intended to voluntarily disclose the firearms and did not find that he would have done so if officers had not executed the search warrant. The district court also did not reject Pederson's version of events *in toto*. The district court made only one statement concerning Pederson's credibility by noting that he was "less than candid" with respect to who had access to the storage locker. Most of the district court's findings of historical facts begin with the phrase, "Defendant testified that . . . ." This type of finding suggests that the district court did not determine the truth or falsity of Pederson's testimony because it was unnecessary to do so because, even if Pederson's testimony is assumed to be true, the testimony is sufficient to prove his guilt. Pederson could have asked the district court to clarify the basis of its ultimate finding of guilt with a more complete statement of factual findings. *See State v. Oanes*, 543 N.W.2d 658, 663 (Minn. App. 1996); *see also* Minn. R. Crim. P. 26.04, subd. 1. In the absence of such a request, we are not at liberty to augment the district court's findings with our own assessment of the evidence. "If the court omits a finding on any issue of fact essential to sustain the general finding, it must be deemed to have made a finding consistent with the general finding." Minn. R. Crim. P. 26.01, subd. 2; *see also State v. Holliday*, 745 N.W.2d 556, 562-63 (Minn. 2008). Thus, we are precluded from adopting Pederson's version of disputed facts.

Given the evidence in the trial record and the district court's findings of fact, we have no difficulty concluding that the evidence is sufficient to support the conviction. Pederson plainly was in constructive possession of the firearms, both during their transfer from his home to his storage unit and after the firearms were deposited in his storage unit. Pederson is responsible for the transfer of the firearms from his home to his van and from his van to his storage unit. The firearms remained in his storage unit until they were found by law-enforcement officers. Throughout those periods of time, Pederson was "consciously exercising dominion and control over" the firearms. *Florine*, 303 Minn. at 104-05, 226 N.W.2d at 611; *see also Salcido-Perez v. State*, 615 N.W.2d 846, 848 (Minn. App. 2000) (concluding that appellant constructively possessed firearm by putting it in place where it later was found by law-enforcement officers), *review denied* (Minn. Sept. 13, 2000).

Pederson also contends that he did not "knowingly" possess or exercise control over the firearms because he reasonably believed that he was not in possession of firearms. Peterson's belief is based on a misunderstanding of the law. The state must prove that an ineligible person possessed a firearm with "knowledge of the prohibited item." *Salyers*, 858 N.W.2d at 161. But the state need not prove that the defendant had an accurate understanding of the law, including the law of constructive possession. It is undisputed that Pederson knew that firearms were in his van and in his storage unit. This knowledge satisfies the "knowing" requirement of the statute.

Pederson last contends that his constructive possession of the firearms should be excused by the doctrine of fleeting control because he intended to dispose of the firearms

8

before law-enforcement officers found them.  This court, however, has plainly held, "A fleeting-control exception to the crime of illegal possession of a firearm is not recognized in Minnesota." *In re Welfare of S.J.J.*, 755 N.W.2d 316, 318 (Minn. App. 2008).  Thus, Pederson's fleeting-control contention fails as a matter of law.

In sum, the evidence is sufficient to support Pederson's conviction of possession of a firearm by an ineligible person.

## II. Sentencing

Pederson also argues that the district court erred by denying his motion for a downward departure from the statutory mandatory-minimum sentence.

The offense of possession of a firearm by an ineligible person is subject to a mandatory-minimum sentence of "not less than five years."  Minn. Stat. § 609.11, subd. 5(b) (2012).  Because the offense is a felony, five years is the presumptive sentence.  *See* Minn. Sent. Guidelines 2.E.1 (Supp. 2013).  A district court, however, may impose a shorter sentence "if the court finds substantial and compelling reasons to do so."  Minn. Stat. § 609.11, subd. 8(a) (2012).  It is only a "rare case" that "warrant[s] reversal of the refusal to depart."  *See State v. Bertsch*, 707 N.W.2d 660, 668 (Minn. 2006) (quotation omitted).  "If the district court has discretion to depart from a presumptive sentence, it must exercise that discretion by deliberately considering circumstances for and against departure."  *See State v. Mendoza*, 638 N.W.2d 480, 483 (Minn. App. 2002), *review denied* (Minn. Apr. 16, 2002).  Accordingly, an appellate court will not reverse a district court's discretionary decision not to depart so long as the district court had reasons for refusing to depart.  *See id.*; *State v. Kindem*, 313 N.W.2d 6, 7-8 (Minn. 1981).  The

district court should "carefully evaluate[] all the testimony and information presented before making a determination." *State v. Pegel*, 795 N.W.2d 251, 255 (Minn. App. 2011) (quotation omitted). This court applies an abuse-of-discretion standard of review to a district court's denial of a request for a downward departure. *See Bertsch*, 707 N.W.2d at 668.

In this case, Pederson argued to the district court that "substantial and compelling circumstances" were present because he cooperated fully with police, never actually possessed or used the firearms, was turning his life around, and was in poor health. The state opposed the motion, arguing that imposition of the statutory mandatory-minimum sentence is justified by Pederson's criminal history and his inability in the past to abide by the conditions of probation. The district court denied Pederson's request for the following reasons:

> If you look at your progress plus the nature of the offense itself . . . , I think that this case would be a departure case.
>
> The problem I have with this is that – and it's something, you're right, you can't do anything to change presently, but you've got a criminal history of 5. You've got a history of some violent offenses. That's why you weren't supposed to have a firearm in the first place. Given that, this Court simply can't find its way to a departure.

The record indicates that the district court carefully considered the information presented by Pederson in support of a downward departure but concluded that the reasons favoring a departure do not overcome Pederson's violent criminal history. Specifically, the district court considered the factors relevant to a dispositional departure, such as his amenability to probation, *State v. Heywood*, 338 N.W.2d 243, 244 (Minn. 1983), which

10

includes factors such as his "age, his prior record, his remorse, his cooperation, his attitude while in court, and the support of friends and/or family," *State v. Trog*, 323 N.W.2d 28, 31 (Minn. 1982). The district court also considered the factors relevant to a durational departure, such as "whether the conduct involved in the offense of conviction was significantly more or less serious than the typical conduct for that crime." *See State v. Peter*, 825 N.W.2d 126, 130 (Minn. App. 2012), *review denied* (Minn. Feb. 27, 2013). The parties presented arguments both for and against a downward dispositional departure. The district court acknowledged that mitigating factors might have justified departure. But the district court exercised its discretion by declining to depart.

In sum, the district court did not abuse its discretion by denying Pederson's motion for a downward departure and by imposing the statutory mandatory-minimum sentence.

Before concluding, we note that Pederson filed a *pro se* supplemental brief. We have fully considered the arguments contained in that brief in conjunction with our consideration of the arguments presented by Pederson's appellant counsel.

**Affirmed.**