STATE of Minnesota, Respondent,

v.

**Frank Edward JOHNSON, Appellant.**

No. A03–469.

Court of Appeals of Minnesota.

May 18, 2004.

---

380

Mike Hatch, Attorney General, James B. Early, Assistant Attorney General, St. Paul, MN, and Raymond F. Schmitz, Olmsted County Attorney, Olmsted County Courthouse, Rochester, MN, for respondent.

John M. Stuart, State Public Defender, Rochelle R. Winn, Assistant State Public Defender, Minneapolis, MN, for appellant.

Considered and decided by WILLIS, Presiding Judge; SCHUMACHER, Judge; and WRIGHT, Judge.

## OPINION

WRIGHT, Judge.

In this appeal from convictions of first-degree burglary, fifth-degree assault, and third-degree criminal sexual conduct, and from the denial of a motion for a new trial, appellant challenges the sufficiency of the evidence, the jury instructions, and prosecutorial comments in closing argument. Appellant raises additional arguments in his pro se brief. We affirm in part and reverse in part.

## FACTS

Jesse Maki and Melodee Rohrer leased a one-bedroom apartment in Rochester. They permitted Lisa Madison and O.S. to stay with them without charging rent. Madison was staying with the couple for about three weeks until her apartment became available; O.S. had been there for about a month and was staying until she could find another place to live. Generally, Madison slept in the living room on an inflatable mattress. But if Rohrer and Maki were going to be up late, they allowed Madison, who worked an early shift, to sleep in their bedroom. O.S. usually slept on the floor of the living room.

On September 3, 2002, the four roommates went to CJ's, a karaoke bar, where O.S. met appellant Frank Johnson. While at the bar, O.S. danced with and talked to Johnson. During the course of the evening, Johnson began kissing O.S. Although O.S. initially returned the kisses, she later rebuffed Johnson.

O.S. left the bar to give Madison a ride home. Because Maki and Rohrer planned to stay up late, Madison went to sleep in the bedroom as previously arranged. O.S. returned to the bar for several hours. Rohrer, Maki, O.S., and Johnson returned to the apartment after the bar closed.

When Rohrer and Maki started arguing, Johnson and O.S. went to the bathroom to talk. After the argument ended, they returned to the living room. Shortly thereafter, O.S. went into the bathroom and started taking a shower.

O.S. testified at trial that Johnson appeared in the shower without any clothes on and cornered her. She told Johnson that she did not want to do this because she was feeling uncomfortable. Johnson retreated at first, but he approached O.S. again in the shower. O.S. told Johnson no and got out of the shower. As O.S. was getting dressed, Johnson told her to take off her pants. O.S. refused. Johnson then told O.S. that he was going to rip her pants off, and he pushed her against the wall. O.S. fell to the floor.

When Johnson leaned over O.S. and tried to convince her to have sex with him, O.S. continued to refuse. She testified

that she did not scream because she thought she could handle Johnson's advances, and she did not want anyone to feel sorry for her. Johnson eventually penetrated her.

Rohrer walked in the bathroom and saw Johnson and O.S. O.S. testified that she did not say anything, but she gave Rohrer a look with which she intended to communicate, "Help me get out of here." Rohrer left the bathroom without assisting O.S.

Testifying as a defense witness, Rohrer explained that, in the bar, Johnson and O.S. had been "awfully friendly" and that it looked like "maybe something ... was going to happen between them that night." Rohrer testified that she did not hear any noise coming from the bathroom during the period when, according to O.S., Johnson was raping O.S. Rohrer explained that, when she went to the bathroom, she found O.S. and Johnson sitting on the floor. Rohrer testified that "[O.S.'s] back was against the wall and her legs were spread and [Johnson] was sitting in between her," with O.S.'s arms around his neck. Johnson turned around and said "hey," but O.S. did not say anything. Rohrer described O.S.'s expression as an "oh sh-t kind of look," not a frightened look. Rohrer then walked out and slammed the door behind her.

O.S. testified that, after Rohrer left, she told Johnson that she was going to vomit, and he got off of her. O.S. returned to the living room and Johnson followed shortly thereafter. O.S. sat across the room from him with her head between her legs because she was disgusted and did not want to look at him. When Johnson and O.S. were briefly alone, Johnson asked O.S., "What do I have to do to push you down, do I have to hold you now?" O.S. responded, "No, you don't." Johnson then grabbed O.S. and held her down. As Maki returned to the living room, Johnson re-leased O.S., who then went to the bedroom.

When O.S. went into the bedroom where Madison was sleeping, she crawled into bed on the other side of Madison. Madison described O.S. as trembling like a leaf, distraught, "sheet white," and very upset. O.S. asked if she could sleep in the bed with Madison. Madison consented and asked O.S. what was wrong. O.S. told Madison, "[He] raped me." When Madison asked O.S. who had raped her, O.S. started crying.

The events on which the burglary and assault convictions are based happened next. Rohrer testified that, after O.S. went to the bedroom, she, Maki, and Johnson sat in the living room while Johnson had a cigarette. As Rohrer prepared to go to bed, Johnson asked if he could go into the bedroom to say goodbye to O.S. Rohrer gave Johnson permission, but told him to be quiet because Madison was sleeping.

Johnson walked into the bedroom at about the same time that Madison asked O.S. who raped her. Madison testified that Johnson told O.S. to come out of the bedroom so that he could talk to her. O.S. told Johnson that she did not want to talk to him or go anywhere with him. Madison, who described Johnson as very drunk and angry, told Johnson three times to leave the bedroom. Johnson struck Madison. Conflicting testimony was given as to when Rohrer and Maki came into the bedroom, whether Rohrer told Johnson to leave the bedroom, and whether this occurred before Johnson struck Madison.

Rohrer, O.S., and Madison then went to the police station so that O.S. could report the rape. Rohrer returned home while Madison accompanied O.S. to the emergency room for tests.

Rohrer asked Johnson to leave the apartment, but he refused to do so. The police were called to the apartment and two officers handcuffed Johnson and took him to detox.

A few days later, Johnson's girlfriend and another woman approached O.S. in a bar and tried to persuade her to change her story by threatening to follow O.S. out of the bar and jump her. Later, at another bar, a friend of Johnson asked O.S. whether it was true that Johnson raped her. When O.S. said it was, the friend advised her to "watch her back." O.S. then told Johnson's girlfriend that she was going to drop the charges.

O.S. went to the police station and told the police she wanted to drop the charges because she was afraid for her life. She told the police, however, that what she told them the night of the rape was true, that she was not recanting, and that she only told Johnson's friends that she was recanting because of their threats.

After a trial, the jury found Johnson guilty of first-degree burglary, third-degree criminal sexual conduct, and fifth-degree assault. The district court denied Johnson's posttrial motions, and this appeal followed.

## ISSUES

I. Was the evidence insufficient as a matter of law to convict appellant of first-degree burglary?

II. Did the district court err in refusing to instruct the jury on trespassing as a lesser-included offense?

III. Was the evidence insufficient as a matter of law to convict appellant of third-degree criminal sexual conduct?

IV. Was appellant's right to a fair trial denied based on jury instructions or improper final argument by the prosecutor?

V. Can appellant prevail on his pro se arguments?

## ANALYSIS

■ "Construction of a criminal statute is a question of law subject to de novo review." *State v. Colvin,* 645 N.W.2d 449, 452 (Minn.2002). Our canons of construction require us to construe a statute according to its plain language. *See* Minn. Stat. § 645.16 (2002). If the language of the statute is ambiguous, the legislature's intent controls. *Colvin,* 645 N.W.2d at 452. "A rule of strict construction applies to penal statutes, and all reasonable doubt concerning legislative intent should be resolved in favor of the defendant." *Id.* Criminal statutes must be strictly construed. *Id.*

■ When considering a sufficiency-of-the-evidence challenge, we view the evidence in the light most favorable to the verdict and assume that the jury believed the evidence supporting the conviction and disbelieved any contradictory evidence. *State v. Pippitt,* 645 N.W.2d 87, 92 (Minn. 2002). "[I]t is the function of the jury to evaluate the credibility of the witnesses." *Id.* Thus, we will not disturb the verdict if, after a careful analysis of the record, we determine that "a jury, giving due regard to the presumption of innocence and to the state's burden of proof beyond a reasonable doubt, could reasonably conclude that the defendant was guilty based on the facts in the record and any legitimate inferences therefrom." *State v. Harris,* 589 N.W.2d 782, 791 (Minn.1999) (quoting *State v. Wallace,* 558 N.W.2d 469, 472 (Minn.1997)).

## I.

■ Johnson first argues that the evidence was insufficient as a matter of law to convict him of first-degree burglary. Johnson's burglary conviction is based on

Johnson's act of committing an assault after he was told to leave the bedroom of the apartment. Johnson contends that, because no one who had lawful possession of the apartment told him to leave prior to the assault, he had permission to be in the bedroom and thus did not commit a burglary. We, therefore, examine the facts in the light most favorable to the jury verdict and then apply the burglary statute to those facts.

We first consider whether the tenants, Rohrer and Maki, who indisputably had lawful possession of the apartment, told Johnson to leave the bedroom before the assault occurred. The evidence on this point is contraverted. Rohrer testified that she never told Johnson to leave. Rather, after the assault, she told Maki to get Johnson out of the bedroom and that if Johnson could not calm down, she wanted him out of the apartment. Madison testified initially that the tenants were not in the bedroom before she was struck. When later asked by counsel when the tenants arrived, Madison recalled that they arrived and told Johnson to leave the bedroom prior to the assault. Specifically, Madison testified that, in an attempt to get Johnson to leave, Rohrer pushed Johnson on his right shoulder and told him he was not allowed in the bedroom, that Madison was sleeping and needed to get up in the morning, and that Johnson should not be there. Maki also told Johnson that he did not belong in the bedroom and that he needed to leave the room. Then Johnson assaulted Madison. Based on Madison's testimony, the jury had evidence from which it could reasonably conclude that the tenants told Johnson to leave the bedroom before the assault occurred.

We now examine these facts to determine whether as a matter of law the evidence was sufficient to constitute burglary in the first degree. One who "enters a building without consent and commits a crime while in the building" commits first-degree burglary if "the burglar assaults a person within the building." Minn.Stat. § 609.582, subd. 1(c) (2002). It is undisputed that Johnson committed an assault while within the building. The issue presented here is whether Johnson was in the building without consent when the assault occurred. Entering a building without consent is defined as:

 (a) to enter a building without the consent of the person in lawful possession;

 (b) to enter a building by using artifice, trick, or misrepresentation to obtain consent to enter from the person in lawful possession; or

 (c) *to remain within a building without the consent of the person in lawful possession.*

Minn.Stat. § 609.581, subd. 4 (2002) (emphasis added). A building is defined as "a structure suitable for affording shelter for human beings, including any appurtenant or connected structure." Minn.Stat. § 609.581, subd. 2 (2002).

We must determine whether, when Johnson had permission to be in the apartment, the withdrawal of consent to be in the bedroom constituted remaining within the "building" without the consent of those in lawful possession under Minn.Stat. § 609.581, subd. 4(c).

The state argues that Johnson committed burglary because he remained in the bedroom without the consent of the tenants and committed an assault. In *State v. Totimeh*, the defendant entered a campus house and committed sexual assault in a bedroom after being told to leave the house by another resident. 433 N.W.2d 921, 923 (Minn.App.1988), *review denied* (Minn. Feb. 22, 1989). The defendant maintained that he was in the house with consent because it was common practice on

campus for guests to enter common areas of a house without specific permission. *Id.* The defendant was a stranger, not a guest; and the residents testified that this common practice did not extend to private bedrooms. *Id.* We held that, when the defendant failed to comply after being told to leave the house several times, the state met its burden of proving that he entered the building without consent. *Id.* (citing Minn.Stat. § 609.581, subd. 4(c)). The instant case, however, is distinguishable because Johnson entered the apartment and the bedroom with the express consent of the tenants and later was told to leave only the bedroom.

 While we are mindful that the specific statutory language at issue must be considered, other jurisdictions that have addressed whether rented rooms constitute a separate building provide useful guidance to our analysis. "The question whether a rented room is a separate building turns on, among other things, physical access, whether the unit is 'self-contained.'" *State v. Pena*, 183 Or.App. 211, 51 P.3d 646, 649 (2002). When a tenant, who rented a room in a single-family home and had access to the kitchen and living room, but not to other locked rooms, entered the locked area and stole items, a burglary was committed. *Wesolic v. State*, 837 P.2d 130, 131–33 (Alaska Ct.App.1992). Similarly, the Minnesota Supreme Court has held that a defendant who walked through a portion of a store that was open to the public, committed a burglary when he entered a storage room that was not open to the public and tried to gain access to the locked pharmacy to steal drugs. *State v. McDonald*, 346 N.W.2d 351, 352 (Minn.1984). In contrast, while Johnson sought and received permission to go into

the bedroom, the bedroom was neither separately rented out nor a self-contained unit such that when the tenants revoked their consent to Johnson's presence in the bedroom, it constituted a separate "building" for purposes of the burglary statute.[1]

Because permission to be in the apartment was not withdrawn when the tenants told Johnson to leave the bedroom, Johnson's actions did not satisfy the burglary statute's requirement of remaining "within a building without the consent of the person in lawful possession."

The state also argues that the jury reasonably could have found that Johnson obtained consent from Rohrer to enter the bedroom by misrepresenting to her that he was only going into the bedroom to say goodbye to O.S. when in fact he tried to persuade O.S. to leave with him instead. It is true that, under the burglary statute, entering a building without consent includes entering the building "by using artifice, trick, or misrepresentation to obtain consent to enter from the person in lawful possession." Minn.Stat. § 609.581, subd. 4(b); *see also State v. Zenanko*, 552 N.W.2d 541, 542 (Minn.1996) (upholding burglary conviction based on entry by misrepresentation). But the jury was not instructed on subdivision 4(b). Rather, the state requested and the district court gave the instruction for subdivision 4(c), remaining within a building without consent. *See* Minn.Stat. § 609.581, subd. 4(c). Consequently, the conviction cannot be based on the misrepresentation theory.

## II.

Johnson next contends that the district court erred when it refused to instruct the jury on the lesser-included offense of tres-

---

1. For the same reasons discussed above, the state's argument that the burglary conviction is supported by sufficient evidence because Madison had authority to revoke the consent to be present in the bedroom is equally unavailing.

pass. In light of our reversal of the burglary conviction, we need not reach this issue.

### III.

Johnson also challenges his conviction of third-degree criminal sexual conduct, arguing that the evidence was insufficient as a matter of law. We view the evidence in the light most favorable to the verdict, assuming that the jury credited evidence supporting the conviction and discredited evidence to the contrary. *Pippitt*, 645 N.W.2d at 92. Minor inconsistencies and conflicts in evidence do not necessarily render testimony false or provide the basis for reversal. *State v. Stufflebean*, 329 N.W.2d 314, 319 (Minn.1983). Corroboration is not required in criminal sexual conduct cases. Minn.Stat. § 609.347, subd. 1 (2002). But "[t]he absence of corroboration in an individual case . . . may well call for a holding that there is insufficient evidence upon which a jury could find the defendant guilty beyond a reasonable doubt." *State v. Ani*, 257 N.W.2d 699, 700 (Minn.1977) (quoting Note, *The Rape Corroboration Requirement*, 81 Yale L.J. 1365, 1391 (1972)).

Johnson contends that inconsistencies in O.S.'s testimony, the lack of corroboration, her recantation, and her own conduct, which he asserts was inconsistent with one who has been forcibly raped, render the evidence insufficient as a matter of law to convict him of third-degree criminal sexual conduct. We disagree. First, the inconsistencies and related credibility determinations were for the jury to assess. *Pippitt*, 645 N.W.2d at 92. In addition, O.S.'s testimony was corroborated in several ways. A prompt complaint by a victim is corroborative evidence of a rape. *State v. Reinke*, 343 N.W.2d 660, 662 (Minn.1984). O.S. told Madison about the rape shortly after it occurred

and reported it to the police the same night. Testimony from others about a victim's emotional condition after a sexual assault is also corroborative evidence. *Id.* The record establishes that O.S. was trembling, very distraught, "sheet white," and very upset when she came into the bedroom where Madison was sleeping, and she started crying when asked who raped her. O.S. was still visibly shaking when she went to the police station and reported the rape.

Although there is evidence that O.S. recanted, the jury also heard testimony that the recantation was in response to threats from Johnson's acquaintances. O.S. explained this to the police and informed the police that her report of rape was true. Finally, as to whether O.S.'s conduct during the rape was inconsistent with a sexual assault, the jury heard the explicit testimony of O.S. recounting facts, as described above, that satisfy the elements of third-degree criminal sexual conduct. *See* Minn. Stat. § 609.344, subd. 1(c) (2002) (sexual penetration accomplished by force or coercion). The verdict clearly was based on sufficient evidence from which the jury could convict Johnson of third-degree criminal sexual conduct, where the jury obviously credited O.S.'s testimony.

### IV.

Johnson contends that the district court denied his right to a fair trial because it instructed the jury that an alleged victim's testimony need not be corroborated and because the prosecutor committed prejudicial misconduct in its closing argument.

District courts have "considerable latitude" in determining the language used to instruct the jury. *State v. Gray*, 456 N.W.2d 251, 258 (Minn.1990). An instruction is erroneous if it materially misstates the law. *State v. Kuhnau*, 622

N.W.2d 552, 556 (Minn.2001). It is the burden of the defendant to show prejudice from the error. *Id.*

■ Although the testimony of a victim of criminal sexual conduct need not be corroborated, Minn.Stat. § 609.347, subd. 1, it is improper to instruct the jury that corroboration is not required because the lack of corroboration is an evidentiary matter, rather than a substantive matter. *State v. Williams,* 363 N.W.2d 911, 914 (Minn.App.1985), *review denied* (Minn. May 1, 1985). But where the jury is properly instructed on the burden of proof and the state's need to prove its case beyond a reasonable doubt, we have held that the erroneous instruction was not prejudicial. *Id.*

Here, the court instructed the jury as follows: "The testimony of an alleged victim need not be corroborated but a lack of corroboration may be a relevant consideration in determining believability." The state contends that, while the first clause may be considered error, the second clause favors Johnson and offsets the error. We agree. Moreover, the record establishes that corroboration was abundant here. When the challenged instruction is considered in conjunction with the district court's proper instruction of the jury on the state's burden of proving its case beyond a reasonable doubt, we do not find prejudicial error. *See id.*

■ Johnson also challenges various statements the prosecutor made during closing arguments. "The propriety of a prosecutor's final argument is a matter within the sound discretion of the trial court." *State v. Parker,* 353 N.W.2d 122, 127 (Minn.1984). We examine the prosecutor's argument as a whole to determine whether it provides a basis for reversal. *State v. Gassler,* 505 N.W.2d 62, 69 (Minn. 1993). Johnson failed to object to the comments he now challenges. "Generally,

a defendant is deemed to have waived his right to raise an issue concerning the prosecutor's closing remarks if the defendant fails to object or seek cautionary instructions." *Parker,* 353 N.W.2d at 127. Notwithstanding the failure to object, we will reverse a conviction "if the prosecutor's comments are unduly prejudicial." *Id.* at 127–28.

■ Johnson maintains that the state unduly emphasized the erroneous corroboration instruction during closing arguments. Johnson also contends that he was denied the right to a fair trial because the prosecutor argued that Johnson acted in conformity with Johnson's "bad character." After a careful review of the prosecutor's closing argument, we hold that Johnson has failed to demonstrate that these statements constitute prosecutorial misconduct warranting a new trial. *See State v. Steward,* 645 N.W.2d 115, 124–25 (Minn.2002).

■ Despite Johnson's failure to object, of greater concern are Johnson's assertions that the prosecutor improperly commented on Johnson's failure to present evidence and failure to testify. The state argued as follows:

What evidence do we have before us that tells us that [O.S.] said words or did overt acts to communicate this freely given present agreement for a particular sexual act? I suggest to you, ladies and gentlemen ... the evidence from which you can decide this case is void of any direct evidence showing this agreement to consent to sex. The sex has been proven, but the words or overt acts showing the consent, where is the evidence?

Now, I want to be very, very clear. You shall draw no inference whatsoever from the defendant's right not to testify. That's his right and you cannot draw any inference one way or the other

about that, but you are confined in your decision to the evidence in the record that is before us and that is the testimony and the exhibits here. There is not a single witness who can stand up and say I heard [O.S.] say let's have sex. There's not a witness that can say I saw the sorts of actions, overt action that would imply that.

■ The state has the burden of proving the essential elements of the case beyond a reasonable doubt. *In re Winship*, 397 U.S. 358, 362, 90 S.Ct. 1068, 1071, 25 L.Ed.2d 368 (1970). The prosecutor may not comment on the defendant's failure to call witnesses. *Gassler*, 505 N.W.2d at 69. The above excerpt of the closing argument is improper because it suggests to the jury that a defendant bears some burden of proof or that he did not call a witness because the testimony would be unfavorable. *See State v. Caron*, 300 Minn. 123, 127, 218 N.W.2d 197, 200 (1974).

■ But prosecutorial misconduct in itself is insufficient to require reversal. *State v. Spencer*, 311 Minn. 222, 230–31, 248 N.W.2d 915, 920 (1976). Under certain circumstances, a remark by a prosecutor on the lack of evidence regarding the defense theory does not shift the burden of proof to the defense. *Gassler*, 505 N.W.2d at 69. If the defendant had objected, curative instructions given by the district court could have ameliorated the improper prosecutorial comment. *Caron*, 300 Minn. at 127, 218 N.W.2d at 200. Failure to object may indicate that defense counsel did not consider the error obvious or important. *See Spencer*, 311 Minn. at 230, 248 N.W.2d at 920. Nevertheless, the district court's final instructions advised the jury that closing arguments of counsel are not evidence, and the final instructions properly set forth the state's burden of proof along with the absence of any burden of proof for the defense. We presume

that the jury followed the instructions. *See State v. Taylor*, 650 N.W.2d 190, 207 (Minn.2002).

■ A prosecutor "shall not allude to the defendant's failure to testify." *State v. Whittaker*, 568 N.W.2d 440, 451 (Minn. 1997). This "may be either per se reversible error or harmless error." *Id.* Comments that constitute reversible error occur "when the comment is extensive, when the comment stresses to the jury that an inference of guilt from silence is a basis for conviction, and when there is evidence that could have supported acquittal." *Id.* Otherwise, the error is harmless. *Id.* Here, the focus of the prosecutor's argument was on the credibility of the witnesses, and the jury could have acquitted had they found O.S.'s testimony not credible. But the improper comments were not extensive, and there was no objection to them. In light of the entire record, the error attributable to the prosecutorial misconduct was harmless.

## V.

Johnson raises a number of issues in his pro se brief. Having carefully reviewed these issues, we conclude that they are without merit.

## DECISION

Because the evidence considered in the light most favorable to the verdict is insufficient for a conviction of burglary in the first degree, we reverse that conviction. The evidence, however, is sufficient to support the conviction of third-degree criminal sexual conduct. The erroneous jury instructions and improper comments by the prosecutor are not prejudicial, and the allegations of other errors lack merit.

**Affirmed in part and reversed in part.**