*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2012).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A12-1970
A14-0544**

State of Minnesota,
Respondent,

vs.

Gerard McNeal,
Appellant,

and

Gerard McNeal, petitioner,
Appellant,

vs.

State of Minnesota,
Respondent.

**Filed October 20, 2014
Affirmed
Cleary, Chief Judge**

Hennepin County District Court
File No. 27-CR-12-5793

Lori Swanson, Attorney General, St. Paul, Minnesota; and

Michael O. Freeman, Hennepin County Attorney, Linda M. Freyer, Assistant County Attorney, Katie Lynch (certified student attorney), Minneapolis, Minnesota (for respondent)

Frederick J. Goetz, Gregory J. Young, Goetz & Eckland P.A., Minneapolis, Minnesota (for appellant)

Considered and decided by Worke, Presiding Judge; Cleary, Chief Judge; and Reyes, Judge.

## UNPUBLISHED OPINION

**CLEARY**, Chief Judge

Appellant Gerard McNeal was charged with criminal sexual conduct in the first degree, one count of aggravated robbery in the first degree and two counts of assault in the second degree. A jury found him guilty on all counts and he timely appealed the criminal sexual conduct conviction. Appellant then requested a stay of the direct appeal to petition for postconviction relief, which this court granted. At the postconviction hearing, appellant argued that he received ineffective assistance of counsel. The postconviction court denied appellant's petition and he appealed. This court consolidated the direct appeal and appeal from the postconviction hearing and affirms.

## FACTS

In February 2012, K.H. and her sister M.H. were living together in a duplex in Minneapolis. During this time period K.H.'s boyfriend, L.B., would frequently stay overnight at the duplex. On February 10, 2012, K.H., M.H. and L.B. were all at the duplex. Around 10:30 p.m., M.H.'s friend ("Q") came to the house. After about 20 minutes, Q told M.H. he was going to the bathroom, but he left the duplex instead. A couple minutes after Q left the duplex, two unknown men entered. An armed man entered K.H.'s room, and an unarmed man entered M.H.'s room. The

2

gunman had a silver pistol. K.H., M.H. and L.B. later identified the gunman as appellant.

When the gunman entered K.H.'s room, he told K.H. and L.B. to lie down on an air mattress. The unarmed man brought M.H. into K.H.'s bedroom. The gunman instructed the three victims to remove all of their clothes, stand on the air mattress and put their faces against the wall. L.B. stood between K.H. and M.H. The intruders then searched through the room and asked the victims where the money was. K.H. testified that only the gunman spoke in the bedroom, while M.H. testified that she heard the unarmed man speaking as well.

While the three victims were standing against the wall, the gunman approached K.H. He spread her legs apart and digitally penetrated her vagina without her consent for about one minute while she faced the wall. K.H. started shaking during the assault, which prompted the gunman to ask her "what the f-ck" she was shaking for. After about a minute, the gunman stopped and resumed looking through the room. The gunman took M.H. into her bedroom to look for money and then led her into the living room to sit on the couch.

The gunman returned to K.H.'s room and told L.B. to go into the living room. L.B. slipped on the air mattress on the way out so the gunman hit him on the head with the butt of his gun. L.B. started bleeding, but he was able to walk into the living room and lie on the couch.

K.H. was alone in her bedroom when the gunman returned. He grabbed her hair, put her head up against the wall and digitally penetrated her vagina a second

3

time.  He also grabbed her breast.  The gunman then led K.H. out of her bedroom and had her lie down on top of L.B.  The intruders told the three victims to close their eyes and not to move.  When they thought that the intruders had left, the victims got up to call the police.  The intruders took a PlayStation, cell phones, a lap top, $200 cash and prescription medication, among other things.

The police arrived at the scene of the crime shortly after they were called. The officers took descriptions of the suspects.  K.H. described the gunman as a "little short dude" who was around the same height as L.B.  She also said that she did not notice any facial hair or tattoos on the gunman and that he appeared to be between 30 and 38 years old.  K.H. did not see the second suspect well.  K.H. went to the hospital to have an exam for sexual assault; there was no DNA evidence or evidence of digital penetration found in the exam.

M.H. gave a statement describing the gunman as short, chubby and clean shaven.  M.H did not notice tattoos or other scars on the gunman.  M.H. described the second suspect, who she first encountered in her room, as "the little, tall boy." The police compiled a composite description of the gunman: a height between five feet four inches and five feet seven inches, between 30 and 38 years old, no facial hair, a round face, almost bald and no tattoos.

The Minneapolis Crime Lab found four fingerprints on a box thrown on the floor during the robbery.  The police uploaded the fingerprints into a database and it identified "Gerard McNeal" as a potential match.  The police obtained a sample of fingerprints from appellant and determined that they matched those taken from the

4

box. The police also discovered, through the serial number of the stolen PlayStation, that appellant had pawned the PlayStation and accessories that were taken during the robbery.

K.H. and M.H. subsequently identified appellant in photo line-ups as the armed robber from the night of February 10, 2012. L.B. did not identify appellant as the gunman in a photo line-up. He testified later that he chose the unidentified second suspect instead.

A four day jury trial was held from July 17th to 20th, 2012. Appellant did not testify at trial. The jury found appellant guilty on all four counts and the district court sentenced him to 360 months in prison. On October 31, 2012, appellant filed a notice of appeal. On March 26, 2013, this court granted appellant a stay of the direct appeal pending a postconviction proceeding for ineffective assistance of counsel. The Hennepin County District Court held an evidentiary hearing to determine whether appellant's right to effective assistance of counsel had been violated.

Trial counsel presented three defenses at trial: alibi, misidentification and incomplete police investigation. In support of the misidentification theory, trial counsel focused on the discrepancies between the description of the gunman provided by the victims to the police and appellant's appearance. Trial counsel argued that appellant did not fit the description of the suspect because he is taller, slimmer and has tattoos on his arms, neck and hands. Trial counsel questioned all three of the victims about these discrepancies at trial.

In support of the alibi defense, trial counsel called four witnesses who testified that appellant was at a birthday party the night of the robbery. The witnesses were appellant's girlfriend and three of her cousins. Appellant's girlfriend testified that she and appellant arrived at her cousin's house between 6:00 and 7:00 p.m. and stayed there until 8:30 or 9:00 p.m. After the party, they went home to change clothes and went to a club in Brooklyn Center around 11:30 p.m. Appellant's girlfriend said that they stayed at the club until closing time at 2:00 a.m. Appellant introduced two pictures into evidence that were allegedly taken that night. The three other witnesses for appellant testified to substantially the same alibi as appellant's girlfriend with some differences in the time line.

The third defense that trial counsel presented was the alleged incomplete police investigation. He argued that the prosecution could not prove appellant was the perpetrator because they did not have a DNA examination. He also questioned the police on why they did not follow the stolen iPhones when their location was known following the robbery.

At the postconviction hearing, appellant and his girlfriend testified regarding the individual they believed to be the alternative perpetrator. Appellant and his girlfriend testified that M.H.'s friend, Q, orchestrated the robbery and that another individual named Ronelle was the gunman. They believed that Ronelle was the actual gunman because he fit the description given by the victims and they knew he committed robberies. Appellant's girlfriend also testified at the postconviction

6

hearing that Ronelle "was hanging with Q and when I think of Q, I think of Ronelle" and that she had seen Ronelle with a gun before.

Appellant testified that he gave his trial counsel information about Ronelle after he had a chance to read through the motions and discovery material. Appellant did not give trial counsel any last name or street address for Ronelle. Appellant testified that he "didn't know [Ronelle's] last name was Banks, I thought his last name was Douglas at first." Appellant said that his girlfriend gave trial counsel two photographs depicting Q and Ronelle the week before the trial started. Appellant and trial counsel found pictures of Ronelle by using a Facebook account the weekend before trial. Appellant said that the man was labeled as "Ronelle Banks" in one of the photographs they found. Trial counsel testified that the Facebook photographs did not have any names attached to them.

Trial counsel also testified at the postconviction hearing and explained how he attempted to locate the alternative perpetrator. After appellant told trial counsel about his suspicions concerning Ronelle, trial counsel attempted to locate Ronelle by sending an investigator to meet with appellant's family to get more information. The investigator was unable to locate Ronelle or get a full name. Trial counsel also sent an investigator to look into a photograph at a convenience store that allegedly portrayed Ronelle, but the photograph was not there.

In March 2014, the district court issued an order denying appellant's motion for a new trial based on the ineffective-assistance-of-counsel claim. Appellant timely filed a separate notice of appeal of the postconviction hearing, a motion to

7

vacate the stay of direct appeal, and motion to consolidate the direct appeal with the appeal from the order denying postconviction relief. This court vacated the stay of the direct appeal and consolidated the appeals.

## D E C I S I O N

### I.    Appellant received effective assistance of counsel

Appellant argues that trial counsel failed to provide effective assistance of counsel in three ways: he acted unreasonably by failing to conduct a thorough investigation of facts related to the alternative perpetrator and by failing to bring a motion notifying of an alternative-perpetrator defense; he did not request a full fingerprint packet and do an independent analysis; and he failed to object to improper expert testimony. The postconviction court rejected the first two arguments as trial strategy not subject to review, and it rejected the third argument because appellant did not show prejudice.

"When a defendant initially files a direct appeal and then moves for a stay to pursue postconviction relief, we review the postconviction court's decisions using the same standard that we apply on direct appeal." *State v. Beecroft*, 813 N.W.2d 814, 836 (Minn. 2012). This court reviews ineffective-assistance-of-counsel claims de novo. *Opsahl v. State*, 677 N.W.2d 414, 420 (Minn. 2004).

The right to counsel is guaranteed by the Sixth Amendment of the U.S. Constitution. U.S. Const. amend. VI. The right to counsel includes the right to effective assistance of counsel. *Strickland v. Washington*, 466 U.S. 668, 686 (1984). To establish ineffective-assistance-of-counsel, (1) appellant must

demonstrate that counsel's performance fell below an objective standard of reasonableness, and (2) appellant must show a reasonable probability exists that the outcome would have been different but for counsel's errors. *State v. Rhodes*, 657 N.W.2d 823, 842 (Minn. 2003). The court need not address both prongs if one is dispositive. *Id.*

When evaluating an attorney's performance, there is a strong presumption that counsel's performance was reasonable. *Boitnott v. State*, 631 N.W.2d 362, 370 (Minn. 2001). Minnesota courts generally will not review an ineffective-assistance-of-counsel claim based on trial strategy, which includes such decisions as what evidence to present to the jury and what witnesses to call at trial. *State v. Bobo*, 770 N.W.2d 129, 138 (Minn. 2009).

A. **Trial counsel's decision not to raise an alternative-perpetrator defense or do further factual investigation into an alternative perpetrator was trial strategy**

Appellant makes two arguments concerning the alternative-perpetrator defense. First, appellant argues that trial counsel did not make a reasonable factual investigation into the alternative perpetrator. Second, appellant argues that trial counsel should have raised the alternative-perpetrator defense and that the failure to present the defense where possible is per se objectively unreasonable. Both arguments fail because trial counsel's decisions were trial strategy.

Instead of raising the alternative-perpetrator defense, trial counsel decided to pursue misidentification, alibi and incomplete police investigation defenses. Trial counsel questioned all three witnesses about the discrepancies in appearance

9

between appellant and the description of the suspect provided by the victims to police. He argued in closing that appellant looked nothing like the suspect described to the police. He also presented four witnesses who testified that appellant was at a party the night of the crime. Trial counsel's decision to pursue other defenses was trial strategy that this court will not second guess. *Hodgson v. State*, 540 N.W.2d 515, 518 (Minn. 1995) (rejecting arguments that trial counsel was ineffective because he failed to present an alternative-perpetrator defense or pursue leads because they "relate to matters of trial strategy").

Trial counsel also conducted a factual investigation once appellant informed him that he believed the alternative perpetrator was an individual named Ronelle. Trial counsel directed an investigator to meet with appellant's family to get more information and to look for a picture of Ronelle, but the investigator was unable to locate Ronelle or find any other information. Trial counsel used a Facebook account to look for pictures of Ronelle with appellant the weekend before trial—it is disputed whether the search led to a picture with an identifying name. Trial counsel did an investigation into the alleged alternative perpetrator and his decision to focus his preparation on other defenses was trial strategy that this court will not second guess. *Opsahl*, 677 N.W.2d at 421 ("We are in no position to second-guess counsel's decision to focus his strategy on other defenses instead of investigating [other] suspects."); *see also State v. Jones*, 392 N.W.2d 224, 236 (Minn. 1986) (finding that the extent of counsel's investigation is considered a part of trial strategy).

Appellant improperly relies on *Nicks* to support the argument that trial counsel's decisions were not trial strategy, but a failure to present a complete defense. In *Nicks*, the defendant was convicted of first degree murder. *State v. Nicks*, 831 N.W.2d 493, 496 (Minn. 2013). A key piece of evidence was that the defendant had threatened the victim in a phone call the night of the murder. *Id.* Defendant's trial counsel requested cell phone records, but failed to correctly read or understand the cell phone provider's response. *Id.* at 505-07. Despite the absence of cell phone records, counsel still argued the calls never took place at trial. *Id.*

The defendant lost at trial and sought postconviction relief, but he was denied an evidentiary hearing. *Id.* at 502. He appealed the decision saying that his trial counsel's failure to correctly analyze the cell phone evidence amounted to ineffective assistance of counsel, since a main defense at trial was that the phone conversations never occurred. *Id.* at 505. The supreme court concluded that the defendant had not met the burden for a new trial, but that he had proven ineffective assistance of counsel by a fair preponderance of the evidence and was therefore entitled to an evidentiary hearing. *Id.* at 504, 508. The supreme court distinguished other trial strategy cases: "Unlike the cases where trial counsel has considered possible strategies and rejected them, it appears that the cell[]phone-record evidence was not obtained because trial counsel did not follow up on information received and did not perform the necessary steps to successfully execute on his main theory

11

of the case." *Id.* at 507. Thus, in *Nicks* the trial counsel received evidence and simply failed to analyze it correctly.

In contrast to *Nicks*, where the attorney failed to analyze the evidence and execute the main defense, trial counsel here chose not to bring an alternative-perpetrator defense at all. He reasonably gathered facts, and after analyzing those facts, he decided to pursue misidentification, alibi and incomplete police investigation defenses. Trial counsel presented evidence and questioned witnesses in accordance with those defenses. *Nicks* is therefore distinguishable and any reliance on it is misplaced.

This court need not consider the prejudice prong of *Strickland* because trial counsel's decisions were trial strategy. *Rhodes*, 657 N.W.2d at 842.

**B.      Trial counsel's decision not to request a full fingerprint packet was trial strategy**

Appellant argues that he received ineffective assistance of counsel because trial counsel did not request a full fingerprint packet that could have been analyzed by an independent expert. Instead of hiring an expert to independently analyze the fingerprints, trial counsel decided to take the strategy of attacking when the fingerprints could have been placed on the box. In line with this strategy, trial counsel got the expert to testify that he did not know when the fingerprints were placed on the box. Trial counsel's decision to minimize the importance of the fingerprint evidence and not to call an expert witness was trial strategy entitled to deference. *Cooper v. State*, 565 N.W.2d 27, 33 (Minn. App. 1997) (holding that an

12

attorney's decision not to obtain expert testimony or follow evidentiary leads was a tactical judgment), *review denied* (Minn. Aug. 5, 1997).  The court need not reach the prejudice prong since the first is decisive.  *Rhodes*, 657 N.W.2d at 842.

### C.   Trial counsel's failure to object to improper expert testimony did not prejudice appellant

Appellant argues that trial counsel's failure to object to improper expert testimony fell below an objective standard of reasonableness, and that the failure to object also prejudiced appellant.  At trial, the fingerprint expert stated that he was 100% certain that appellant's fingerprints matched those taken from the box.  Trial counsel did not object.  Trial counsel conceded at the postconviction hearing that he should have objected to the statement made by the forensic expert.  *See State v. Dixon*, 822 N.W.2d 664, 675 (Minn. App. 2012) (holding that experts in various fields can testify "to a reasonable scientific certainty," thereby implying that they cannot testify to an absolute certainty).  He also stated his failure to object was not trial strategy.

This court need not analyze the reasonableness of the failure to object because the second prong of *Strickland* is decisive—appellant has not met his burden of proving prejudice.  Appellant has not shown there is a reasonable probability that, but for the failure to object, the result of the trial would have been different.  Appellant argues that the failure to object took the ultimate issue of the identity of the perpetrator out of the hands of the jury.  However, the fingerprint match did not identify appellant as the perpetrator—it only established that

13

appellant had touched the box at some point. The in-court identification of appellant as the gunman by three witnesses was likely the most important evidence the jury considered to establish the identity of the perpetrator.

Additionally, the failure to object does not create a reasonable probability that the outcome would have been different because the jury still would have heard testimony that the fingerprints matched, just to a lesser degree of certainty. If trial counsel had objected, the trial court would have sustained the objection based on *Dixon*. The state then would have had to re-phrase the question to inquire into the expert's level of certainty about the match. The rephrased question would not have changed the fact that the expert found a match between the fingerprints from the box and appellant's fingerprints.

## II. There was sufficient evidence presented at trial for a jury to reasonably conclude that appellant was guilty of criminal sexual conduct in the first degree

The jury found appellant guilty of one count of criminal sexual conduct in the first degree. Appellant argues the evidence was insufficient to support a conviction for four reasons: no physical evidence of the sexual penetration exists; neither of the other victims witnessed the sexual assault; K.H. and M.H. gave contradictory testimony regarding who spoke during the crime; and K.H. did not see appellant during the act of the sexual assault.

Appellate review of a challenge to the sufficiency of the evidence is "limited to a painstaking analysis of the record to determine whether the evidence, when viewed in a light most favorable to the conviction, was sufficient to permit the

14

jurors to reach the verdict which they did." *State v. Webb*, 440 N.W.2d 426, 430 (Minn. 1989). The court "will construe the record most favorably to the state and will assume the evidence supporting the conviction was believed and the contrary evidence disbelieved." *State v. Pieschke*, 295 N.W.2d 580, 584 (Minn. 1980). We will not reverse a conviction for insufficient evidence if the jury, acting with due regard for the presumption of innocence and the necessity of proof beyond a reasonable doubt, could reasonably conclude that the defendant was guilty of the offense. *Bernhardt v. State*, 684 N.W.2d 465, 476–77 (Minn. 2004). When a case is based on conflicting testimony, it is the exclusive function of the jury to weigh credibility and choose between conflicting versions of the incident. *State v. Heinzer*, 347 N.W.2d 535, 538 (Minn. App. 1984), *review denied* (Minn. July 26, 1984).

A person who engages in "sexual penetration with another person" is guilty of criminal sexual conduct in the first degree if he or she is armed with a dangerous weapon and uses or threatens to use the weapon to cause the complainant to submit. Minn. Stat. § 609.342, subd. 1(d) (2012). "Sexual penetration means . . . any intrusion however slight into the genital or anal openings . . . of the complainant's body by any part of the actor's body or any object used by the actor for this purpose" without the complainant's consent. Minn. Stat. § 609.341, subd. 12(2)(i) (2012). The testimony of the victim alone is sufficient for a conviction. Minn. Stat. § 609.347, subd. 1 (2012) ("In a prosecution under section[]609.342 [criminal

sexual conduct in the first degree] . . . the testimony of a victim need not be corroborated.").

Appellant argues there was insufficient evidence because there was no physical evidence of sexual assault or corroborating testimony. But K.H.'s testimony was sufficient evidence to support a conviction. *Id*. K.H.'s prompt reporting and subsequent emotional condition described by her sister and boyfriend were also corroborating evidence for the jury to consider. *See State v. Johnson*, 679 N.W.2d 378, 387 (Minn. App. 2004), *review denied* (Minn. Aug. 17, 2004) ("A prompt complaint by a victim is corroborative evidence of a rape. . . . Testimony from others about a victim's emotional condition after a sexual assault is also corroborative evidence.").

Appellant argues that K.H. and M.H. gave contradictory testimony about which suspects were speaking during the robbery, and that the contradictory testimony does not support a conviction. The inconsistencies described by appellant go to the credibility of the witnesses, which is a matter for the jury to consider. *See State v. Stufflebean*, 329 N.W.2d 314, 319 (Minn. 1983) (holding that inconsistent testimony does not require reversal especially in the case of "a traumatic and extremely stressful incident" where human perception is more likely to be flawed). The jury did not think the inconsistencies were relevant enough to acquit appellant, and this court will not second guess the jury's decision in this case.

Appellant argues that there is not enough evidence to support K.H.'s identification of appellant as the actual perpetrator. Appellant bases his argument

on the fact that K.H. was facing the wall when she was sexually assaulted and did not actually see the perpetrator during the act. However, there was evidence for the jury to reasonably conclude that appellant was the gunman and assailant. K.H. testified that she identified appellant during the first assault by his voice, because he asked her "what the f-ck" she was shaking for during the assault. During the second assault, K.H. identified appellant because he was the only person in the room at the time and he spoke to her again. Appellant also led her into the living room after the assault. Based on these experiences, K.H. identified appellant at trial and during a photo line-up. The jury reasonably concluded that the evidence was sufficient for a guilty verdict and this court will not disturb the verdict. *Bernhardt*, 684 N.W.2d at 476–77.

**Affirmed.**