*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2012).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A13-1910**

State of Minnesota,
Respondent,

vs.

Ernest Henry Chouinard,
Appellant.

**Filed December 15, 2014
Affirmed
Ross, Judge**

Dakota County District Court
File No. 19HA-CR-12-3406

Lori Swanson, Attorney General, St. Paul, Minnesota; and

James C. Backstrom, Dakota County Attorney, Stacy St. George, Assistant County Attorney, Heather D. Pipenhagen, Assistant County Attorney, Hastings, Minnesota (for respondent)

Max A. Keller, Lexie D. Stein, Keller Law Offices, Minneapolis, Minnesota (for appellant)

        Considered and decided by Chutich, Presiding Judge; Halbrooks, Judge; and Ross, Judge.

**ROSS**, Judge

The state accused Ernest Chouinard of getting into a sleeping seven-year-old girl's bed and rubbing her vagina, and a jury convicted him of second-degree criminal sexual conduct. Before trial, the district court announced that it would allow the state to introduce evidence that, shortly before Chouinard entered the girl's bedroom, he made comments to a neighbor about wanting to have sex with the neighbor's 13-year-old daughter. The district court denied Chouinard's request to admit evidence that the seven-year-old victim had been previously sexually abused by her brother. Chouinard appeals his conviction, challenging the district court's decision to admit his pre-assault sexual comments but not to admit the girl's sex-abuse history. He also maintains that the victim was an incompetent witness and that the evidence was insufficient to convict him. Because none of Chouinard's arguments identifies any abuse of discretion or legal error, we affirm.

## FACTS

The mother of seven-year-old K.M. reported to Rosemount police that house guest Ernest Chouinard had sexually abused K.M. during the previous night. K.M. told police that Chouinard came into her bedroom while she slept, lay in her bed, and rubbed her vagina. Dakota County charged Chouinard with second-degree criminal sexual conduct.

The state disclosed that it intended to present *Spreigl* evidence indicating that, within two hours before Chouinard entered K.M.'s bedroom, he made comments to a neighbor that he wanted to have sex with her 13-year-old daughter. The neighbor testified

2

during a hearing that Chouinard was visiting in her home and drinking alcohol at about 2:30 a.m. when he became belligerent. She asked Chouinard to leave, and he did not. During the altercation he told her that if he did not "f - - k" her 13-year-old daughter now, he would "have her before she turned 17." She called the police, who arrived and cited Chouinard for trespassing.

The district court determined that Chouinard's statements to the neighbor were admissible. It found specifically that Chouinard told her "that he would 'f - - k' her daughter now, when she was 13, or have her before she was 17." The district court reasoned that this evidence was permitted under evidentiary rule 404(b) because it showed *corpus delicti* (the doing of the act charged), intent to have sex with a minor, and a common scheme or plan.

Chouinard disclosed that he intended to introduce evidence that K.M. had previously been sexually abused by her older brother. He maintained essentially that this evidence would support his theory that the prior abuse had left K.M. so hypersensitive to potential abuse that she misinterpreted his allegedly appropriate touching to be inappropriate, sexually abusive touching. The district court was not persuaded and it held the prior-abuse evidence inadmissible.

K.M. testified at trial. She became openly emotional and cried. She needed two breaks during her direct examination and one during her cross-examination. She testified that Chouinard put his hand on her "down-there section," which she described through questioning to be her vagina. She demonstrated for the jury what Chouinard did with his hand, placing "her right hand on her left hand, both palms down, and [making] a rubbing

3

motion with it." K.M. said that this rubbing made her feel uncomfortable. In addition to K.M.'s live testimony, the jury heard recorded interviews of K.M. with a police officer and a social worker. In both interviews, K.M. relayed that Chouinard had rubbed her vaginal area.

K.M.'s older sister also testified. She told the jury that she heard Chouinard and K.M. talking and came into the bedroom to find Chouinard lying shirtless in K.M.'s bed and K.M. angrily demanding that he get out.

Chouinard testified on his own behalf. His testimony vacillated. He first told the jury that he had gone upstairs to take a shower, and then he told the jury that he had gone upstairs to check on K.M. He claimed that after he saw K.M. in bed he kissed her on the head. When asked whether he touched K.M. "anywhere on her body," Chouinard said, "No." But he later answered, "Yes, it's possible," when asked if it was "possible [his] hand may have touched part of her body." He added later, "I mean, she was squirming . . . . I may have touched her, who knows?" He answered, "I don't know about that," when asked directly if it was possible that he touched her vagina, but then he denied that he touched her "anywhere that [he] should not be touching [K.M.]."

The jury found Chouinard guilty of second-degree criminal sexual conduct. Chouinard appeals from his conviction.

## DECISION

Chouinard first challenges the district court's decision to admit evidence of Chouinard's statements to K.M.'s neighbor about his interest in having sex with her 13-year-old daughter within two hours before his assault of K.M. Evidence of a defendant's

4

prior bad acts, known as *Spreigl* evidence, cannot be admitted to prove character or that the defendant acted consistent with his character. Minn. R. Evid. 404(b); *State v. Spreigl*, 272 Minn. 488, 490, 139 N.W.2d 167, 169 (1965). But the district court may admit it for other purposes, such as "motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." Minn. R. Evid. 404(b). The district court has discretion whether to admit *Spreigl* evidence. *State v. Ness*, 707 N.W.2d 676, 685 (Minn. 2006).

Chouinard contends that the district court abused its discretion by failing to find exactly the words Chouinard uttered about the 13-year-old. The district court could admit the statement if it was proved by clear and convincing evidence that Chouinard made the statement. *See Id*. at 685–86. Whether the statement is probative of something other than character, such as intent or state of mind, is a question of law. The record overwhelmingly establishes that Chouinard made the statement. But Chouinard maintains that an ambiguity nevertheless renders the statement inadmissible.

It is true that the district court's characterization of Chouinard's crude comments is somewhat ambiguous. After receiving and weighing the evidence of Chouinard's comments, the court concluded, "While the exact working is not precise, it can be said by clear and convincing evidence that the Defendant did tell [the neighbor] that he wanted to 'f - - k' her 13 year old daughter at the time or when she was older." One might logically, but only by straining, read this finding as Chouinard interprets it: he said either one of two things, but not both. That is, he argues that the district court found either that he said that he wanted to have sex with the 13-year-old girl at that time, or that he said that he

wanted to have sex with the girl but only after she got older. Chouinard maintains that the statement that he wanted to have sex with the girl only after she grew older is not probative of any intent or plan to have sex with the much younger K.M. and that the district court's inability to rule out the possibility that this was the actual statement renders its admission of the evidence an abuse of discretion.

We reject Chouinard's argument. We first dismiss his strained interpretation of the finding. We do so by observing that the finding arises from testimony that strongly suggests that the district court did not find that Chouinard either said that he wanted to have sex with the young child or said that he wanted to have sex with the child only after she grew older. The neighbor's testimony informs us that the district court found that Chouinard was stating that he intended to have sex with the young girl either at the time he made the statement or later after she aged. In other words, the district court found that Chouinard expressed his sexual interest as a now-or-later disjunctive proposition. But our holding does not rest on this observation. Under any interpretation (including Chouinard's), the statement evidences the disturbing relevant fact that, shortly before his contact with the victim child, Chouinard, a 37-year-old man, was sexually aroused by a 13-year-old girl. For our purposes, it does not matter whether Chouinard was expressing that he wanted to act at the time he made the statement or that he wanted to act at a later date when sex with the girl might not constitute second-degree criminal sexual conduct. The point is that Chouinard's statement proves that within two hours before he climbed shirtless into bed with one young girl, he had become sexually aroused by another young girl. The statement evidences Chouinard's extant pedophilic stimulation and his express

6

desire to act on that stimulation at some point. It does not matter at what point he was saying he would act; what matters is that he was sexually aroused by a child. We therefore have no difficulty holding that the statement is probative of Chouinard's sexually charged state of mind shortly before he entered K.M.'s bedroom. The district court did not abuse its discretion by admitting the *Spreigl* evidence. We observe that the evidence might also be admissible immediate-episode evidence. *See State v. Riddley*, 776 N.W.2d 419, 425 (Minn. 2009) (explaining immediate-episode evidence).

Chouinard also argues that the district court abused its discretion by denying his request to admit evidence of K.M.'s alleged prior sexual abuse. Even if the rape-shield law would otherwise prevent it, evidence of a victim's past sexual conduct may be admissible when excluding the evidence would infringe the defendant's constitutional right "to due process, his right to confront his accusers, or his right to offer evidence in his own defense." *State v. Benedict*, 397 N.W.2d 337, 341 (Minn. 1986). But Chouinard does not coherently explain how the prior-sex-abuse evidence would have supported his defense, and we are convinced it could not have. He speculates that the evidence would have helped him show how the "oversensitive" K.M. must have misinterpreted what his appellate counsel calls "an accidental pat to the midsection." But his trial counsel made no offer of proof tending to show that a child victim of sexual abuse is likely to confuse an innocent touch with a sexual touch. And more difficult for Chouinard's argument, even if he had made such an offer of proof, any error in excluding the evidence is harmless beyond any reasonable doubt. This is because K.M. testified and demonstrated that Chouinard put his hand on her vagina and rubbed. The jury believed K.M.'s

7

testimony, necessarily rejecting Chouinard's assertion that he engaged in conduct that might be construed as an accidental pat. The district court's failure to allow evidence to support the speculative theory that sexual assault victims might confuse accidental pats with sexual touching therefore had no bearing on the guilty verdict here. The district court acted well within its discretion by rejecting Chouinard's argument and refusing to admit the prior-abuse evidence.

Chouinard's next contention has even less merit. He maintains that the district court was obligated *sua sponte* to stop the trial and initiate a hearing to test K.M.'s competence as soon as it observed her break down emotionally during her testimony. Chouinard fails to provide any legal standard for this supposed obligation. He bears the burden of providing one, and we will not supply one for him. *See* Minn. R. Civ. App. P. 128.02, subd. 1(d). We are confident that, if there is such a standard, the district court did not fail to meet it by not challenging the competency of a child sex-abuse victim after she wept when asked about her assailant and what he did to her. When pressed, Chouinard's counsel acknowledged during oral argument on appeal that one could reasonably infer from K.M.'s courtroom conduct not that she was incompetent but that she was distraught.

Given that Chouinard's indirect challenges to the district court's evidentiary rulings do not persuade us, we also hold that sufficient evidence supports Chouinard's conviction of second-degree criminal sexual conduct. A victim's testimony alone is sufficient to support a conviction. Minn. Stat. § 609.347 (2012); *State v. Johnson*, 679 N.W.2d 378, 387 (Minn. App. 2004), *review denied* (Minn. Aug. 17, 2004). K.M. testified unambiguously that Chouinard, who had just expressed his interest in young

girls, got into her bed and fondled her sexually. The evidence supports the verdict, and we affirm the conviction.

**Affirmed.**