STATE of Minnesota, Respondent,

v.

**Ralph H. TAYLOR, Appellant.**

No. C5–87–1894.

Court of Appeals of Minnesota.

July 26, 1988.

Review Denied Sept. 28, 1988.

Hubert H. Humphrey, III, Atty. Gen., St. Paul, Thomas Johnson, Hennepin Co. Atty., Vernon Bergstrom, Chief, Appellate Section, J. Michael Richardson, Asst. Co. Atty., Minneapolis, for respondent.

C. Paul Jones, State Public Defender, Elizabeth B. Davies, Asst. Public Defender, Minneapolis, for appellant.

Considered and decided by LANSING, P.J., and RANDALL and KALITOWSKI, JJ., without oral argument.

## OPINION

RANDALL, Judge.

Appellant Ralph Henry Taylor was convicted, after a court trial, of two counts simple robbery, Minn.Stat. § 609.24, and sentenced to 54 months incarceration concurrent for each count (appellant received appropriate jail time credit against the 54 months). The two counts relate to two different victims, Clemons and Pedraza. Count three of the complaint was dismissed at the close of the state's case. Taylor appeals the conviction of both counts. We affirm in part and remand for findings required by Minn.R.Crim.P. 26.01, subd. 2.

## FACTS

Shortly after midnight on the morning of February 10, 1987, a black male entered the 7-eleven at 1600 Chicago Avenue in Minneapolis. When he entered the store, the cashier, Alisa Clemons, was conversing with Jose Pedraza, a customer. Marilyn McCray, another employee, was in the

stock room. There were about five or six other customers in the store.

The man demanded money of Clemons, and ordered all other people in the store to get down on the floor. He had one hand under his shirt, as if to hold a weapon. Clemons put two five dollar bills and some coins into a bag, and gave them to the man. As the man was going out the door, Pedraza grabbed at his legs. Clemons heard the man drop what turned out to be a key ring, and saw a bottle fall out from underneath his shirt.

At trial, Clemons described the man as 5'6", about 165 pounds, dark complected and with a faint mustache. She testified that he was wearing a long-sleeved brown-striped shirt with a blue inner color, dark jeans, a T-shirt under his shirt, and no jacket or head covering. Clemons testified that she had seen the man in the store on previous occasions, less than a year prior to the robbery.

Marilyn McCray heard and saw a portion of the robbery from the store room. She described the robber as skinny, nervous and frail, wearing a brown-striped shirt with long sleeves, and having "nappy" hair. After Clemons had given the robber the money, McCray heard Jose Pedraza say "He don't have a gun." McCray then came out of the storeroom, ran outside, and saw the man getting into a brown car. She saw him place a baby bottle on the car seat. While the man was fumbling with his keys, she beat on the window and bent the antenna.

After she completed a 911 telephone call, Clemons went outside. She also saw the man sitting inside the car, fumbling with keys. She kicked against the glass, while McCray was bending the antenna, and Pedraza was letting the air out of a tire. When Clemons and McCray went back to the store for something hard to use to try to break the windows of the car, the man jumped out of the car and ran off.

Shortly after the robber fled, the police responded to Clemons' 911 call. Clemons testified that when the police arrived at the 7–eleven, the description of the suspect had to be corrected. Later, the police returned with appellant in the back seat of the squad car. The arresting officer, Officer Drew, testified he monitored the report of the robbery at about 12:39 a.m. on the morning of February 10, 1987. He recalled that the description of the suspect was a black male, about 5'9" and 145 pounds, wearing a gray striped shirt, dark pants, and white tennis shoes. After Drew refreshed his memory with a copy of his report, he testified the description was of a 25–year old black male, wearing blue checkered shirt and brown coat. Clemons testified this description was corrected before the police arrested appellant.

At trial, Clemons testified that she identified appellant as the man who robbed her. McCray testified that of four people the police brought to the store, she recognized appellant as the robber, and identified him to the police. Appellant was arrested at about 2:30 a.m. approximately five blocks from the 7–eleven. At the arrest, he was wearing a gray striped shirt, faded jeans, and white tennis shoes. He was arrested because he was the suspect in another robbery Drew was investigating. Drew testified he and his partner saw Taylor standing in the shadows, and when they illuminated him with a spotlight, he "came running out in the street with his hands in the air." The police found only three one-dollar bills on Taylor's person, but no five's. They found a brown coat, but no money, in Taylor's room. Drew thought Taylor resembled the description of the robber, and took him to the 7–eleven, where first Clemons and then McCray identified him.

Appellant's version of the facts is as follows. Appellant testified that he spent the evening of February 9 with a friend, drinking, smoking and talking as they sat in the parking lot of his friend's apartment. He testified that as he left his friend's place, a police car almost hit him when he crossed a street. Appellant testified a police officer got out of the car, pulled a gun out, and that when appellant raised his hands, he got punched in the stomach and knocked to the ground.

Appellant testified that he was placed in the police car and taken to the 7–eleven,

where other squad cars with black males were pulling out of the parking lot. Appellant testified that before leaving the squad car, Drew stated "I hope this dumb bitch can make up her mind." He testified that Clemons came out of the store and told Drew appellant did not look like the robber because he had a brown jacket on. He testified that Drew and Clemons went into the store, and then Clemons came out with McCray, and both stated they knew appellant.

Appellant denied ever having been at the 7-eleven before. He was in Stillwater prison for the three years and seven months preceding his release on February 2, 1987, with only a short period of release in 1986. February 2, 1987, appellant was released to Reentry West, a convict's halfway house, where he stayed until February 10, 1987, the date of the crime and his arrest.

Appellant was charged with three counts of simple robbery: i.e., taking property from or in the presence of Clemons (count 1), Pedraza (count 2) and a third individual (count 3). After a trial without a jury, appellant was convicted of counts one and two. Taylor appeals the convictions, alleging various errors.

## ISSUES

1. Was the evidence sufficient to support appellant's conviction for the two counts of simple robbery?

2. Did the trial court err by failing to make written findings in accordance with Minn.R.Crim.P. 26.01, subd. 2?

## ANALYSIS

### I

A. *Sufficiency of evidence—Clemons*

■ Appellant contends the evidence was insufficient to support the convictions of simple robbery. Appellant contends Clemons' and McCray's identifications were not reliable because their descriptions of the robber did not coincide with appellant's appearance; because neither McCray nor Clemons could recall when or how often they had previously seen appellant in the

store; and because neither McCray nor Clemons had adequate opportunity to see the robber.

■ We start with the general premise that eye witness testimony, even though it needs scrutiny on review, can, standing alone, support a guilty verdict. *State v. Gluff,* 285 Minn. 148, 150–51, 172 N.W.2d 63, 64 (1969).

Although it is commonly stated that uncorroborated eyewitness identification testimony of a single witness is sufficient to support a guilty verdict, * * * not all single eyewitness cases are the same and * * * when the single witness' identification of a defendant is made after only fleeting or limited observation, corroboration is required if the conviction is to be sustained.

*State v. Walker,* 310 N.W.2d 89, 90 (Minn. 1981) (citation omitted).

Corroborating evidence may be necessary where a witness' identification is weakened by discrepancy, if there is significant doubt about the sufficiency of the evidence to support the conviction. *Id.* Appellant contends such is the case here. He claims his appearance does not match the witnesses' description of the robber, either on the date of the robbery, or in the courtroom. Appellant points out that Clemons described the robber as darker than herself, but claims "the evidence is uncontroverted that appellant's skin tone is lighter than Ms. Clemons." Appellant also points out that McCray described the robber as having "nappy" hair. Appellant testified that "nappy" hair has kinks or nubs, and that he has never worn "nappy" hair. Appellant also contends the witnesses had inadequate opportunity to observe the robber to make a reliable identification.

At trial, both Clemons and McCray unequivocally identified appellant as the robber. Clemons testified appellant was about five feet away from her when he demanded money. She testified appellant was in the store for two to three minutes, and that from the time he entered the store until he left the parking lot, five to seven minutes elapsed. She testified she could see him inside the car, because the parking lot was

well lit. McCray also testified she saw the appellant inside the store, and that he was looking directly at her. She testified she was about four to five feet away from appellant inside the store, and that she could see him inside the car while she was bending the antenna and beating on the window. This testimony is sufficient to support the identification of appellant as the perpetrator of the robbery.

Appellant's argument, that to support a conviction circumstantial evidence must, on the whole, be inconsistent with any reasonable hypothesis of innocence, is inapplicable. *See State v. Berndt*, 392 N.W.2d 876, 881 (Minn.1986) (supreme court reversed a conviction of first degree murder by arson, finding circumstantial evidence would have supported a reasonable hypothesis other than guilt). The *Berndt* court concluded:

> Absent any direct evidence connecting appellant with gasoline or any other kind of accelerant, it is clear that appellant's *conviction was based solely on circumstantial evidence.*

*Id.* at 880 (emphasis added). Here, there was direct evidence connecting appellant with the crime: two eye witnesses present during the crime identified appellant as the robber. The *Berndt* circumstantial evidence analysis is not applicable.

### B. *Sufficiency of the evidence—Pedraza*

■ Appellant contends the trial court erred by convicting appellant of count two of simple robbery, claiming it was not established that appellant threatened the imminent use of force against the victim, Jose Pedraza. Minn.Stat. § 609.24 (1986) provides:

> Whoever, having knowledge of not being entitled thereto, takes personal property from the person or in the presence of another and uses or threatens the imminent use of force against any person to overcome the person's resistance or powers of resistance to, or to compel acquiescence in, the taking or carrying away of the property is guilty of robbery * * *.

The jury instruction guide defines imminent force:

> The term threat of imminent force means the intentional creation in _____'s mind of an understanding that if he resisted or refused to cooperate force would immediately be used against him.

10 Minnesota Practice, CRIM.JIG, 14.02 (1985).

Appellant claims that because Pedraza did not testify, there was no indication as to Pedraza's state of mind. Furthermore, he claims that Pedraza's action of grabbing the robber's legs and subsequent pursuit of the robber was inconsistent with any apprehension of force.

Clemons testified that the robber was looking at Pedraza when he said "Give me the money, bitch, do it now." She testified the robber said to Pedraza "You heard me, m____f____r get down on the floor," and Pedraza got partially down on the floor. Pedraza's pursuit of the robber took place after Pedraza discovered the robber did not have a gun. The evidence is sufficient to support the guilty verdict on the count involving Pedraza.

## II.

### *Written findings*

■ Appellant contends the trial court erred by failing to make written findings as required by Minn.R.Crim.P. 26.01, subd. 2:

> In a case tried without a jury, the court, within 7 * * * days after the general finding in felony and gross misdemeanor cases, shall in addition specifically find the essential facts in writing on the record. * * * If [a] memorandum of decision is filed, it is sufficient if the findings of fact appear therein. If the court omits a finding on any issue of fact essential to sustain the general finding, it shall be deemed to have made a finding consistent with the general finding.

*Id.*

Here, the record contains no written findings of fact. The trial court did state orally on the record:

This Court finds the defendant guilty of Count I, simple robbery. I also find that sufficient proof beyond a reasonable doubt has been provided to find the defendant guilty of Count II, robbery as well.

When appellant complained at sentencing that he was treated unfairly, the court stated:

THE COURT: Well, I heard the witnesses, Mr. Taylor, and I heard them identify you from the stand, and you were here during that procedure. They identified you as the perpetrator of the robbery. They certainly gave sufficient facts on the record to substantiate each and every element of robbery, of simple robbery at least. And obviously I disagree with you. You and I have a disagreement as to whether or not the facts were sufficient to find you guilty of these charges.

You always have a right to appeal, however. Do you understand that?

THE DEFENDANT: Yes.

THE COURT: And I did make a record of my findings on the record.

MR. RYAN: In that regard, I would be requesting a transcript of the Court's specific findings, and I would forward them to Mr. Taylor forthwith as soon as I can obtain them.

It is not in dispute that the trial court did not make a record with written findings. The language of Minn.R.Crim.P. 26.01, subd. 2, applies. The trial court's oral statements made at sentencing could, if put in writing at the conclusion of the testimony, form the basis for compliance with the rule. However, in the context in which they were given, namely in response to a question by defendant at sentencing, the trial court's oral remarks do not substitute for the mandated written findings needed, following presentation of evidence, on the issue of guilty or not guilty.

The record contains evidence sufficient to support the convictions. Thus, we do not reverse. However, we feel compelled to remand to the trial court for the written findings dictated by rule 26.01. Any other interpretation of the rule would appear to us to render the rule meaningless, and we will not abrogate the trial court's function by substituting our own written findings.

## DECISION

Although the evidence supports appellant's conviction of simple robbery, the trial court erred by failing to make written findings in accordance with Minn.R.Crim.P. 26.-01, subd. 2.

Affirmed in part, remanded in part.