*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2012).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A13-2164**

State of Minnesota,
Respondent,

vs.

Rosalind Rae Loggin,
Appellant.

**Filed December 8, 2014
Reversed and remanded
Reyes, Judge**

Ramsey County District Court
File No. 62CR124413

Lori Swanson, Attorney General, St. Paul, Minnesota; and

John J. Choi, Ramsey County Attorney, Thomas R. Ragatz, Assistant County Attorney, St. Paul, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, St. Paul, Minnesota; and

Samuel L. Walling, Special Assistant Public Defender, Robins, Kaplan, Miller & Ciresi, L.L.P., Minneapolis, Minnesota (for appellant)

Considered and decided by Reyes, Presiding Judge; Peterson, Judge; and Reilly, Judge.

UNPUBLISHED OPINION

**REYES**, Judge

Appellant Rosalind Rae Loggin argues that the district court erred by convicting her of gross-misdemeanor theft because the court's findings do not support the legal conclusion that Loggin committed the offense. Loggin also argues that she did not receive a valid stipulated-facts trial under Minn. R. Crim. P. 26.01, subd. 3, because she did not make an intelligent waiver of her trial rights. We reverse and remand.

## FACTS

From 2007 until 2011, Loggin owned, operated, and was one of the primary child-care workers at New Generation Daycare ("New Generation"), a 24-hour childcare center in Saint Paul, Minnesota. New Generation provided childcare services to approximately 25 to 35 children per day. New Generation was an authorized provider of Minnesota Childcare Assistance Programs ("MCCAP") and many of its clients received subsidized childcare assistance through MCCAP. To receive payment for services to clients who receive subsidized childcare assistance through MCAAP, Loggin would submit New Generation's invoices to Ramsey County Community Human Services Department ("RCCHSD").

New Generation did not have any formal sign-in or sign-out procedure for the children in its care. However, New Generation did have a policy requiring a parent to provide a two-week notice and a signed termination letter prior to ending his or her child's attendance at the daycare.

T.B.R. was a client who received subsidized childcare services through MCCAP. T.B.R.'s three children, C.R.L., S.H.R., and T.A.R., attended New Generation. On February 28, 2011, T.A.R. was removed from T.B.R.'s custody. As a result, T.A.R. stopped attending New Generation. T.B.R.'s other two children, however, continued to receive childcare at New Generation. From February 28, 2011, until May 15, 2011, New Generation continued to submit invoices to RCCHSD for the care of all three of T.B.R's children.

In March 2012, investigators from the Ramsey County Attorney's Office interviewed Loggin regarding the suspected overpayment in the total amount of $1,208.00. Loggin told the investigators she did not know T.A.R. was not in her care during the time period of suspected overpayment. Loggin stated that she continued to submit invoices to RCCHSD for T.A.R.'s care because T.B.R. continued to sign the invoices indicating that childcare was provided to all three children. An investigator also interviewed T.B.R. who told the investigator it was New Generation's practice to have the parents sign blank invoices. T.B.R. explained that Loggin would later fill in the information before submitting the invoices to RCCHSD for payment. T.B.R. also told the investigator she signed blank invoices during the time period of suspected overpayment. T.B.R. never provided New Generation with a two-week notice or a signed termination letter ending childcare for T.A.R.

Loggin was charged under an amended complaint with gross-misdemeanor theft by wrongfully obtaining childcare assistance in the amount of $906.00. During a pretrial hearing on May 20, 2013, Loggin's attorney told the district court that Loggin was

3

considering a court trial on stipulated facts. The district court set the matter on for trial for June 3, 2013.

On the day of trial, Loggin informed the district court that she wished to waive her right to a jury trial. Both Loggin's attorney and the district court explained to Loggin the rights she would be waiving, and Loggin's waiver was read into the record. Following the waiver, the parties informed the district court that they intended to proceed to a court trial on stipulated facts pursuant to Minn. R. Crim. P. 26.01, subd. 3 ("subdivision 3"). Loggin's attorney confirmed that Loggin understood the rights she would need to waive in order to proceed and asked Loggin a series of questions relating to the waiver of those rights. On the record, Loggin waived her right to a six-person jury, her right to testify at trial, her right to have the prosecution's witnesses testify in open court in her presence, and her right to require any favorable witnesses to testify for her defense in court, pursuant to a subdivision 3, stipulated-facts trial. Loggin's attorney inquired whether Loggin understood that even though she was giving up those rights, the defense would still be submitting Loggin's testimony in the form of affidavits. Loggin answered in the affirmative. Loggin indicated to the district court that she understood her rights and did not have any questions. The district court accepted Loggin's waiver.

However, the parties then proceeded to a court trial on stipulated evidence and began discussing documents to be submitted to the district court as stipulated exhibits. This was the first time there was any discussion relating to the submission of stipulated evidence. Loggin's attorney confirmed that she had the opportunity to review the documents and that she did not object to the submission of the exhibits. After some

4

discussion off the record, the district court ordered both parties to submit proposed findings. The district court indicated that it was not ready to receive exhibits at that time and ordered the parties to submit the exhibits with their proposed findings. The parties were to complete their submissions by June 17.

After the submissions were received, the district court made written findings of fact, concluding that Loggin was guilty of theft by wrongfully obtaining public assistance. The district court did not make any specific findings on the element of intent. The district court relied on the stipulated evidence submitted by the parties in making its determination. These exhibits included Ramsey County's report and an affidavit by Loggin indicating that she "never intended to bill for a child that was not present in [her] daycare." The exhibits submitted by the parties included contradictory accounts of the material underlying facts.

At Loggin's sentencing hearing, the district court explained to Loggin why it found Loggin guilty:

> You're not being charged with being a horrible, terrible, violent criminal. You were running a business, and the finding of the court was that you were required as a person who runs the business to know that you're charging for kids who you have in your care. And because you were charging the state, it was criminal, but it was a business problem. You were the owner of this business, and you were charging for a child that was not actually in your care . . . [T]he finding of the court . . . [was] that that's criminal.
> . . . .
> I don't know if you can hear the difference here . . . . You have to know what kids are actually in your care and when they're there, and when you charge for them . . . you have to know what you're doing.
> . . . .

> If you charge the state for funds for taking care of a child and that child's not in your care, and . . . you were the owner, you need to have known that, even though it wasn't malicious. . . . [Y]ou weren't a thief, you just put in the paperwork. But the paperwork was wrong, and it's your responsibility to have seen that it was right.

This appeal follows.

## D E C I S I O N

### I.

Preliminarily, Loggin argues that the district court's oral statements at sentencing are considered part of its findings. We are not persuaded.

In felony and gross-misdemeanor cases, a district court must specifically make findings in writing of the essential facts. Minn. R. Crim. P. 26.01, subd. 2(b). To be guilty of the gross-misdemeanor charge of theft by wrongfully obtaining public assistance, a person must act (1) "with intent to defeat the purposes of . . . child care assistance programs" and (2) by obtaining or attempting to obtain, "the receipt of payments to which the individual is not entitled as a provider of subsidized child care, or by furnishing or concurring in a willfully false claim for child care assistance." Minn. Stat. § 256.98, subd. 1 (2010). The statutory phrase "with intent to" means that "the actor either has a purpose to do the thing or cause the result specified or believes that the act performed by the actor, if successful, will cause that result." Minn. Stat. § 609.02, subd. 9(4) (2010). The Minnesota Supreme Court has stated that specific intent requires a mental state above and beyond the mental state required with respect to the actus reus of

6

the crime. *State v. Fleck*, 810 N.W.2d 303, 308 (Minn. 2012). The parties agree that Minn. Stat. § 256.98 is a specific-intent crime.

The district court's written findings omit an express finding on the element of intent. Intent is a specific element for the conviction of theft by wrongfully obtaining public assistance. *See* Minn. Stat. § 256.98. If the district court "omits a finding on any issue of fact essential to sustain the general finding [of guilt], it must be deemed to have made a finding consistent with the general finding." Minn. R. Crim. P. 26.01, subd. 2(e); *see also State v. Totimeh*, 433 N.W.2d 921 (Minn. App. 1988). Thus, pursuant to Minn. R. Crim. P. 26.01, subd. 2(e), the specific factual finding on intent is deemed to have been made by the district court when it made its general finding that Loggin was guilty.

Loggin asks this court to rely on the district court's statements at sentencing to substitute for the district court's lack of a specific written finding on intent. The purpose of requiring written findings is to aid the appellate court's review. *State v. Scarver*, 458 N.W.2d 167, 168 (Minn. App. 1990). But findings may be "gleaned from comments from the bench" so long as the comments "afford a basis for intelligent appellate review." *Id.* (quotation omitted). This court has recognized that oral statements made by the district court can be substituted for written findings under certain circumstances that are inapplicable here.

In *State v. Taylor*, the defendant argued that the district court erred by failing to make written findings. 427 N.W.2d 1, 4 (Minn. App. 1988), *review denied* (Minn. Sept. 28, 1998). This court held that because the record did not contain *any* findings, the district court's oral statements made at sentencing could, if put in writing, form the basis

7

for compliance with Minn. R. Crim. P. 26.01. *Id.* at 5. Nonetheless, this court ultimately held that the context in which the district court's remarks were made, in response to questions by the defendant at sentencing, did not permit the statements to substitute for written findings. *Id.*

Unlike in *Taylor*, there are at least some written findings contained in the record for our review. Therefore, the need to substitute oral statements for written findings that was necessary in *Taylor* is not present here. The district court's statements during sentencing are not a part of its findings of fact.

## II.

Loggin next argues that she did not receive a valid non-jury trial under either subdivision 3 or subdivision 2 because she did not intelligently waive her trial rights. Loggin asserts that, although her waiver was made knowingly and voluntarily, it was not intelligently made because it was done in anticipation of a trial on stipulated facts under subdivision 3, and the district court instead proceeded to a court trial under Minn. R. Crim. P. 26.01, subd. 2 ("subdivision 2") where the facts are disputed.

This court reviews de novo whether the district court complied with Minn. R. Crim. P. 26.01. *State v. Tlapa*, 642 N.W.2d 72, 74 (Minn. App. 2002), *review denied* (Minn. June 18, 2002). Here, it is clear that Loggin did not receive a valid stipulated-facts trial under subdivision 3.

The procedure followed in this case was like the one followed by the parties in *Dereje v. State*, 837 N.W.2d 714 (Minn. 2013). In *Dereje*, the parties agreed to a stipulated-facts trial under subdivision 3, Dereje waived all trial rights, and the parties

8

"jointly submitted the complaint and police reports containing both Dereje's statement and the victim's versions of events to the district court, which found Dereje guilty." *Id.* at 718. Similarly here, the parties agreed to conduct a stipulated-facts trial under subdivision 3, Loggin waived all trial rights, and the parties submitted documents to the court containing contradictory accounts of material underlying facts—namely, the Ramsey County investigator's report upon which the criminal complaint was based, and affidavits from Loggin that she did not intend to bill for children not present and other rebutting facts set forth in the report.

In *Dereje*, the supreme court distinguished between the use of "evidence" under Minn. R. Crim. P. 26.01, subd. 4(e) and "facts" under subdivision 3, "indicat[ing] that the two terms have different meanings." *Id.* at 720-21. The supreme court also defined a "stipulated fact" as an "agreement between opposing parties regarding the actual event or circumstance." *Id.* at 720. The supreme court concluded that Dereje did not receive a valid stipulated-facts trial under subdivision 3, and held that "the submission of documentary evidence presenting contradictory versions of events cannot constitute a valid trial on stipulated facts under Minn. R. Crim. P. 26.01, subd. 3." *Id.* at 721. Here, contradictory versions of events were presented to the district court as evidence. Thus, consistent with the supreme court's holding in *Dereje*, Loggin did not receive a valid trial on stipulated facts under subdivision 3.

However, in *Dereje*, the supreme court outlined an exception to ultimately conclude that Dereje's bench trial was not procedurally defective. The supreme court determined that because (1) the trial met the requirements for a bench trial under

9

subdivision 2; (2) Dereje validly waived his jury-trial rights; and (3) the district court had made "detailed and thorough findings of fact drawn from the stipulated evidence," a new trial was not required. *Id.* This exception is inapplicable to Loggin's case.

Here, Loggin received a bench trial under subdivision 2. However, unlike Dereje, she contests the validity of her waiver of jury-trial rights.[1] More importantly, the district court failed to make detailed and thorough written findings of fact drawn from the stipulated evidence as required in *Dereje* to fall under the exception of the requirement for a new trial.[2] Notably, the district court did not make any finding on a key element of the offense, namely, specific intent to commit the crime of theft by wrongfully obtaining public assistance. And relying on Minn. R. Crim. P. 26.01, subd. 2(e) to supplement the district court's findings with an implicit finding on intent is not helpful for purposes of our analysis under *Dereje*, which requires us to look at the written findings of fact made by the district court to determine whether they are detailed and thorough. Here, they are not. As a result, the exception to a new-trial requirement is not applicable. Because

---

[1] It is important to note that Dereje did not challenge his waiver on appeal, and in fact he received a lower sentence pursuant to a plea agreement. *See Dereje*, 837 N.W.2d at 724 n.3 ("Dereje had the option of a subdivision 2 trial available to him, and he chose to forgo his right to confront and cross-examine witnesses in favor of an agreement in which the [s]tate dropped a felony charge and agreed to a favorable sentencing on his behalf."). This is yet another distinguishing factor. Unlike Dereje, no plea agreement was entered into here and Loggin did not receive any deal in exchange for her giving up her jury-trial rights.

[2] Because there were not enough details in the district court's findings of fact, a reading of the district court's findings does not lead one to the conclusion that Loggin committed the crime to which she was charged beyond a reasonable doubt. In fact, a reading of the findings of fact could lead one just as much to an equally reasonable inference that Loggin was a poor bookkeeper.

Loggin did not receive a valid stipulated-facts trial as agreed to by the parties, and the new-trial exception was not met, under *Dereje* we reverse and remand for a new trial.

**Reversed and remanded.**